**In the Interest of J.C. and S.C., minor children.**

No. 14–10–00262–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 2011.

Crespin Michael Linton, Houston, for appellant.

James Cooper, Rochelle H.R. Cabe, Matthew P. Nickson, Annette Lamoreaux, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

This appeal arises from a custody dispute involving J.C., now an eight-year-old girl, and S.C., her thirteen-year-old brother. Their mother, Socorro Angel, died tragically in November 2006. Her death was ruled a homicide, and her husband, Adan Covarrubias, was charged with her murder. Although the murder charge was eventually dropped, Covarrubias was held in police custody following his subsequent arrest on unrelated immigration violations.

During Covarrubias's period of detention, the children remained in the temporary custody of Bonita Rubio, their paternal grandmother, and Leopoldo and Alvina Angel, their maternal grandparents. The Angels petitioned for managing conservatorship in December 2006. Because of the ongoing investigations into Covarrubias's immigration status and the death of his wife, a hearing on the merits was not conducted until three years after the filing of the petition. Following the recommendation of a child psychologist, the trial court ultimately rendered judgment by separating the children in a split-custody arrangement. Regarding J.C., the Angels and Covarrubias were appointed joint managing conservators, with the Angels receiving the right to determine her primary residence. As to S.C., the Angels' petition was denied and Covarrubias was awarded all rights and duties as a parent.

In his sole issue on appeal, Covarrubias contends the trial court abused its discretion by naming the Angels joint managing conservators of J.C. The Angels have not cross-appealed the trial court's decision regarding S.C. We reverse.

## BACKGROUND

At the time of their mother's murder, J.C. was four years old and S.C. was eight. A temporary order was entered in March 2007, appointing Rubio and the Angels as temporary joint managing conservators of the children. The order was modified in May 2008, sometime after Covarrubias's release from police custody. Under the terms of the modified order, Covarrubias was to have possession of J.C. two nights each week, with the Angels having possession at all other times. The order further stated that the Angels were to have possession of S.C. only upon S.C.'s request. In May 2009, the order was modified a second time to afford Covarrubias extended periods of possession with his daughter.

A hearing on the merits was conducted in December 2009. By that time, J.C. had been living with the Angels for more than two and a half years. The Angels had not seen S.C., however, since early 2007, just a few months after his mother's death. The children's psychologist, Carol Stevens, recommended that S.C. should not be ordered to stay with the Angels. According to Stevens, S.C. maintained a close relationship with his father and he feared losing Covarrubias to the Angels. S.C. was particularly afraid that Mr. Angel might kill Covarrubias, a threat he apparently made in the presence of S.C. on the first anniversary of Socorro's death.

During the hearing, Stevens also testified that J.C. should remain in the custody of her grandparents. Stevens found that J.C. had developed a separation anxiety disorder following her mother's death, and based on her professional observations, the target of J.C.'s disorder was the potential loss of her maternal grandmother. Stevens feared that uprooting J.C. from Mrs. Angel would not be in the child's best interest. Indeed, if J.C. were to be taken

away from the Angels, Stevens testified that "the child will suffer, her emotional health will suffer."

Although Covarrubias repeatedly denied any involvement in his wife's murder, Socorro's family suggested that she still may have suffered at the hands of his abuse. For example, Mrs. Angel testified she once saw bruises on Socorro. Catalina Morgan, Socorro's cousin, also claimed that she observed scratches on Socorro's neck several years before her death. Neither witness could testify as to the exact cause of the injuries, though both claimed that Socorro was afraid of her husband. In fact, Socorro specifically told Morgan that she was afraid of Covarrubias hitting her. In demonstrating this fear, Morgan recounted one discussion where Socorro offered to buy an expensive necklace for Morgan's daughter. Socorro had fought with her husband over money in the past, and Socorro allegedly warned Morgan, "It's only one thing that I don't want you to say anything to nobody because I don't want him to know because we will get into a big argue [sic] again and he might hit me this time and I might left [sic]."

The trial judge conducted an in camera, off-the-record interview with J.C. In open court, the trial judge stated that his decision was based on the witness testimony and his observation of the child during that session in chambers. The trial judge explicitly cited Stevens's recommendation in finding that uprooting J.C. from the Angels would cause "some emotional danger to the child" or an "immediate threat of some sort of damage."

Covarrubias timely filed a motion for new trial and a request for findings of fact and conclusions of law. The motion for new trial was overruled by operation of law, and findings of fact and conclusions of law were never entered. This appeal followed.

## STANDARD OF REVIEW

The trial court is afforded broad discretion in deciding the conservatorship of a child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). We review its judgment for an abuse of that discretion. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.-Houston [14th Dist.] 2009, no pet.). In light of this standard, the Angels assert that we should affirm the judgment summarily on procedural grounds. They allege that Covarrubias ordered an incomplete record on appeal, and therefore, they believe that we must dispose of this case under the presumption that "the omitted portions of the record are relevant and support the trial court's judgment." *Mason v. Our Lady Star of Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

The "omitted portions" to which the Angels refer are transcripts of earlier proceedings on the temporary orders. Copies of these transcripts were never admitted into evidence during the trial on the merits. Nevertheless, the trial court granted the Angels' request to take judicial notice of the proceedings, and thus, the Angels contend the trial court relied on testimony from those proceedings in reaching its final decision.

Contrary to the Angels' assertion, the trial court may not judicially notice any testimony from a prior hearing on a temporary order unless such testimony is properly admitted into evidence. *See May v. May*, 829 S.W.2d 373, 376 (Tex.App.-Corpus Christi 1992, writ denied); *Malekzadeh v. Malekzadeh*, Nos. 14–05–00113–CV & 14–06–00341–CV, 2007 WL 1892233, at *12 (Tex.App.-Houston [14th Dist.] July 3, 2007) (mem. op.); *see also Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex.App.-Houston [14th Dist.] 2011, no

pet.) ("In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence."). Any judicial notice that the trial court took regarding the prior hearings in this case was therefore improper. *See Guyton,* 332 S.W.3d at 693. Accordingly, we do not consider the transcripts of the prior hearings "omitted" from the record as they were never included among the evidence actually admitted.

The appellate record before us consists of the underlying clerk's record and the reporter's record of the trial on the merits. We have determined that the appellate record is complete, and we therefore examine the trial court's decision under the only applicable standard of review: abuse of discretion.

▮ The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Under this standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error, but only factors used in assessing whether the trial court abused its discretion. *In re R.T.K.,* 324 S.W.3d 896, 899–900 (Tex. App.-Houston [14th Dist.] 2010, pet. denied). The trial court does not abuse its discretion so long as the record contains some evidence of substantive and probative character to support its decision. *In re C.A.M.M.,* 243 S.W.3d 211, 214 (Tex. App.-Houston [14th Dist.] 2007, pet. denied).

▮ In this case, the trial court did not enter findings of fact and conclusions of law. Comments made by the trial court during rendition are no substitute for these findings, and we may not consider

them as such. *In re W.E.R.,* 669 S.W.2d 716, 716 (Tex.1984) (per curiam); *Huang v. Don McGill Toyota, Inc.,* 209 S.W.3d 674, 679 (Tex.App.-Houston [14th Dist.] 2006, no pet.). In the absence of written findings, we imply that the trial court made all necessary findings and we will uphold the judgment on any legal theory supported by the evidence. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Chenault v. Banks,* 296 S.W.3d 186, 189 (Tex.App.-Houston [14th Dist.] 2009, no pet.).

Moreover, under binding precedent, the failure to make a transcript of J.C.'s in camera interview does not make the record incomplete, and thus, we do not presume that any facts arose during the interview in support of the trial court's judgment. *Forbes v. Wettman,* 598 S.W.2d 231, 232 (Tex.1980).

## CONSERVATORSHIP OF THE CHILD

In his only issue on appeal, Covarrubias argues that the trial court abused its discretion by appointing the Angels joint managing conservators with the right to determine the primary residence of J.C.

▮ In any case involving an issue of conservatorship, the best interest of the child must always be the primary consideration of the trial court. Tex. Fam.Code Ann. § 153.002 (West 2008). Under Section 153.131, which codifies the common law's "parental presumption," the court must presume that the best interest of the child is served by appointing a parent as sole managing conservator or both parents as joint managing conservators. *See id.* § 153.131(a); *see also In re V.L.K.,* 24 S.W.3d 338, 341 (Tex.2000); *Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963); *Legate v. Legate,* 87 Tex. 248, 28 S.W. 281, 282 (1894). Nonparents carry a "heavy

burden" of overcoming this presumption. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex.1990). It is no longer adequate to offer evidence that the nonparent would be a better custodian of the child. *Id.* Instead, the parental presumption may only be rebutted with proof of certain findings prescribed by statute.

A nonparent may rebut the presumption if evidence is produced showing that appointment of the parent as managing conservator would "significantly impair the child's physical health or emotional development." Tex. Fam.Code Ann. § 153.131(a); *see R.T.K.*, 324 S.W.3d at 902–03. A nonparent may also overcome the presumption by producing evidence of "a history or pattern of past . . . physical . . . abuse by [a] parent directed against the other parent, a spouse, or a child." Tex. Fam.Code Ann. § 153.004(b). In disputes between a parent and a nonparent, the legislature has mandated that "close calls" should be decided in favor of the parent. *Lewelling*, 796 S.W.2d at 168.

In naming the grandparents joint managing conservators of J.C., the trial court determined that the Angels had overcome the parental presumption. The court, however, did not specify the basis for that rebuttal with written findings of fact and conclusions of law. Without findings, the Angels argue that the judgment can be supported on either of two legal theories. First, they contend the evidence establishes that the appointment of Covarrubias as sole managing conservator would significantly impair the emotional development of J.C. In the alternative, they contend the evidence shows that Covarrubias committed acts of domestic violence against his deceased wife. The parental presumption would be rebutted under either scenario, and according to the Angels, the evidence would further demonstrate that the best interest of the child is served by not

uprooting her from her home of the past two and a half years. We find both arguments unsupported by the record.

### Significant Impairment of Emotional Development Under Section 153.131(a)

Carol Stevens supplied the only testimony regarding J.C.'s emotional development and the impairment it would suffer based on a determination of conservatorship. As J.C.'s psychologist of nearly two years, Stevens testified that the child's "emotional health will suffer" if she were taken away from the care of her maternal grandparents. Stevens explained that removing J.C. from the Angels "would increase her issues with her separation anxiety even more." However, Stevens did not describe how, or even if, the child would suffer any impairment that could be characterized as "significant." Stevens merely cited the child's "strong connection" to her maternal grandmother as proof that the child's emotional health would suffer to some unspecified degree. In announcing its decision to appoint the Angels and Covarrubias as joint managing conservators, the trial court stated that "there would be some emotional danger to the child or I think immediate threat of some sort of damage" if custody were stripped from the grandparents.

As a reviewing court, we may consider concepts of psychological parenting, bonding, and the depth of attachments to parental figures in the context of the evidence presented. *See In re De La Peña*, 999 S.W.2d 521, 529 (Tex.App.-El Paso 1999, no pet.). We recognize that safety, security, and stability are factors critical to child welfare, and depending on the circumstances of each case, the danger from uprooting a child may rise to the level of significantly impairing the child's emotional development. *Id.* Significant impair-

ment has been inferred from uprooting a child from a nonparental caretaker when the removal would be "devastating" or akin to "psychological amputation" or cause "serious psychological damage." *See In re Rodriguez*, 940 S.W.2d 265, 273 (Tex.App.-San Antonio 1997, writ denied). But no such testimony was produced in this case.

■■■ Although the record contains some testimony that uprooting J.C. from the Angels would exacerbate her separation anxiety and be harmful to her sense of loss, in no way does the evidence establish that such harm would cause a significant impairment to her emotional development. The evidence also fails to establish that any of the child's visits with her father resulted in disruptive or uncharacteristic behavior, or that she suffered any sort of impairment because of her time away from her grandparents. *See De La Pena*, 999 S.W.2d at 533; *see also R.T.K.*, 324 S.W.3d at 902–03 (examining the effect of an appointment on the child's physical health or emotional development). On the facts of this case, the evidence is insufficient to rebut the parental presumption under Section 153.131(a). *See De La Pena*, 999 S.W.2d at 532.

At best, when considering Stevens's testimony, the only evidence in favor of appointing the Angels as joint managing conservators is the longevity of J.C.'s stay with them. Though her current placement with the Angels has been successful in some respects, the evidence does not show that the child's physical health or emotional development would be significantly impaired were she to live with her father and brother.

### *Domestic Violence Under Section 153.004(b)*

The Family Code establishes a "rebuttable presumption that the appointment of a parent as the sole managing conservator . . . is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by [a] parent directed against the other parent, a spouse, or a child." Tex. Fam.Code Ann. § 153.004(b). Notwithstanding the evidence regarding the child's emotional impairment, the Angels argue that the trial court's judgment can be supported by an implied finding that Covarrubias was physically abusive towards his wife. We disagree.

■■■ Mrs. Angel testified that she once observed bruises on Socorro. Catalina Morgan, Socorro's cousin, testified that she also saw scratches on Socorro's neck. Morgan further testified that Socorro expressed a fear that Covarrubias "might" hit her if she purchased an expensive necklace. Morgan did not supply any context or detail for this statement. There is no testimony that anyone saw Covarrubias hit his wife, nor is there testimony that Socorro ever complained of physical abuse in the past. Likewise, the record contains no evidence that any of the bruising or scratching was attributable to Covarrubias. Although the record reveals that Socorro once feared that Covarrubias would hit her, evidence of fear, without more, is insufficient to support a finding that a person has a history or pattern of direct physical abuse. *See id.; Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

### CONCLUSION

As nonparents seeking managing conservatorship, the Angels were required to establish by a preponderance of the evidence that the parental presumption was overcome. The Angels contend that the presumption was rebutted by implied findings that the appointment of Covarrubias as managing conservator would significant-

ly impair the emotional development of J.C., and that Covarrubias had a history or pattern of physical abuse directed against his wife. We have reviewed the evidence in the light most favorable to those findings, which Covarrubias has now challenged on appeal. After indulging every reasonable inference in the record that would support the findings, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not, we conclude that the record is without any evidence sufficient to overcome the parental presumption. Therefore, the trial court abused its discretion in naming the Angels joint managing conservators with the right to determine the primary residence of J.C.

We reverse the judgment of the trial court and remand for that court to render judgment naming Covarrubias, as the natural parent, sole managing conservator of his daughter. The provisions of the trial court's judgment regarding S.C. should remain the same. The trial court may find it necessary to conduct further hearings on matters relating to the terms and conditions for possession of J.C. *See Lewelling,* 796 S.W.2d at 168–69.