**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed June 25, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00083-CV

---

### SARAH LANSDEN BAKER, Appellant

### V.

### MARK MITCHELL BAKER, Appellee

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-38473**

---

## O P I N I O N

This is an appeal from a judgment of divorce between Sarah Baker ("Mother") and Mitch Baker ("Father"), who are parents to two young children. Mother asks us to consider three issues: (1) whether the trial court erred by appointing Father as a joint managing conservator when the evidence established that Father has a history of family violence against Mother, (2) whether the trial court abused its discretion by imposing death penalty sanctions against Mother in

her tort actions against Father, and (3) whether the trial court abused its discretion by granting the divorce on the basis of insupportability instead of cruelty. Father also raises a cross-point, arguing that we lack appellate jurisdiction because Mother filed an untimely notice of appeal.

We conclude that we have appellate jurisdiction. We further conclude that the trial court erred in its conservatorship ruling and in its decision to impose death penalty sanctions. We reverse the trial court's judgment in part and remand for a new trial on conservatorship and on Mother's tort actions against Father. Because Mother's tort actions present a risk of a double recovery, we also remand for a new division of the community estate. In all other respects, we affirm the trial court's judgment.

## BACKGROUND

The record shows that this was a troubled marriage. There were financial difficulties, problems with addiction, and allegations of infidelity. The tipping point for Mother occurred when Father punched her in the face. The blow knocked Mother to the ground and broke at least two bones in her skull. Surgery was needed to save Mother's eye.

Mother filed for divorce, seeking sole managing conservatorship of the children. She also asserted several torts against Father, including assault, battery, terroristic threats, and intentional infliction of emotional distress. Mother sought exemplary damages in connection with these torts, but the trial court struck them all as a sanction for discovery abuse.

During the non-jury trial, Mother testified that Father is an alcoholic. She also produced evidence that Father has a history of abuse that goes beyond the punch that precipitated this divorce. Mother asserted, for instance, that Father has

2

pushed her, thrown a chair at her, spat on her, and called her derogatory names in front of the children. Father denied some of these assertions, but he does not dispute that he punched Mother.

The trial court rendered a final decree of divorce appointing both parents as joint managing conservators, with Mother having the primary right to designate the children's residence. The court also signed findings of fact and conclusions of law. One of the findings specifically addresses the issue of family violence. It says: "Family violence has occurred in the past but the court declines to find that it is likely to occur in the future." In a separate finding and conclusion of law, the court determined that joint managing conservatorship is in the best interests of the children.

## APPELLATE JURISDICTION

Before we address the merits of Mother's appellate complaints, we must first determine whether this court has jurisdiction over her appeal. Neither party raised the question of jurisdiction in its original brief, but during oral argument, Father suggested that we lacked jurisdiction because Mother's notice of appeal was untimely. We have an independent duty to confirm that we have jurisdiction, and both parties have submitted post-submission briefs addressing this threshold question.

In most cases, a notice of appeal must be filed within thirty days after the date of judgment. *See* Tex. R. App. P. 26.1. If the notice of appeal is untimely, the reviewing court lacks jurisdiction and must dismiss the case. *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP*, 404 S.W.3d 75, 80 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Here, the trial court signed a "Final Decree of Divorce" on September 7, 2013. Pursuant to several post-judgment motions, the court signed a "Reformed Final Decree of Divorce" on December 18, 2013. Under the thirty-day deadline, Mother had until January 17, 2014, to file her notice of appeal. Mother filed her notice of appeal six days after that deadline, on January 23.

Rule 26.1(a) of the Rules of Appellate Procedure provides that a party has ninety days to file a notice of appeal, instead of the traditional thirty days, if any party files a motion for new trial, a motion to modify the judgment, a motion to reinstate, or a request for findings of fact and conclusions of law. Mother filed a request for findings of fact in this case, but only after the "Final Decree of Divorce," not the "Reformed Final Decree of Divorce." After the reformed decree, Mother moved solely for a de novo hearing from the referring court.

In his post-submission brief, Father argues that Mother's motion for a de novo hearing is insufficient to trigger the ninety-day deadline provided by Rule 26.1(a). We need not decide this particular question because the rules provide a separate means for perfecting the appeal.

Under Rule 26.3, we may extend the time to file a notice of appeal if, within fifteen days after the deadline for filing the notice of appeal, a party files the notice of appeal in the trial court and a motion in the appellate court requesting the extension. *See* Tex. R. App. P. 26.3. Father contends that Mother never filed a motion to extend time that complied with our rules, but our records indicate that she did. Mother filed her motion in our court on January 27, 2014, which was within the fifteen-day window, and we granted the motion on May 1, 2014. We accordingly conclude that Mother perfected her appeal and that we have appellate jurisdiction.

## CONSERVATORSHIP

In Mother's first issue, we must determine whether the trial court erred by appointing Father as a joint managing conservator.

## I.    Analysis

The best interests of the children must always be the primary consideration when determining issues of conservatorship. *See* Tex. Fam. Code § 153.002. The trial court is afforded great discretion when making such determinations, and we review the trial court's decision for an abuse of that discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Because the trial court has no discretion when determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *See Bradford v. Pappillion*, 207 S.W.3d 841, 844 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

The law presumes that the appointment of both parents as joint managing conservators is in the best interests of the children. *See* Tex. Fam. Code § 153.131(b). That presumption is removed, however, if the trial court makes a finding of a history of family violence. *Id.*

Section 153.004 of the Family Code provides specific instructions whenever a trial makes a finding of past violence. Subsection (b) states, "The court may not appoint joint managing conservators if credible evidence is presented of a history

or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child . . . ." *Id.* § 153.004(b).

Mother contends that Section 153.004(b) precludes Father from being a joint managing conservator because credible evidence was presented that Father has a history of being physically abusive. We agree. By making an express finding of family violence, the trial court determined that the evidence of physical abuse was credible in this case. Even though the trial court described its finding in the passive voice, we can deduce that the trial court attributed the violence to Father and not to Mother. Father's role in the punching incident was uncontested and there was no evidence presented that Mother has ever been violent.

Father responds that the trial court's finding is not dispositive. He contends that Section 153.004(b) is applicable only when there is an express finding of a "history or pattern of past or present child neglect, or physical or sexual abuse." Father suggests that the trial court's more general finding of "family violence" does not qualify under the statute.

"Family violence" is a specially defined term under the Family Code. It means "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault." *Id.* §§ 71.004, 101.0125. "Physical abuse" is undefined, which means that we construe it according to its common usage. *See* Tex. Gov't Code § 311.011(a). "Abuse" can have many definitions, but in the context of person-to-person contact, it means "physical maltreatment." *See* Webster's Ninth New Collegiate Dictionary 47 (1984). Based on the broad meanings of both terms, we conclude that an act by one spouse that is intended to result in bodily injury to the other spouse, and actually results in bodily injury to the other spouse, qualifies as both family violence and physical abuse. We reject Father's argument that the

6

trial court's finding of family violence is insufficient to trigger the effects of Section 153.004(b).

Father also argues that, as a matter of law, there was no "history" of physical abuse because the punching incident was just an "isolated incident." We disagree. Mother testified about other abusive actions directed against her, in addition to the punching incident. These actions included pushing, spitting, and the throwing of objects.

Even if Father disputed all of these actions, the trial court could have found a history of physical abuse based solely on the punching incident. Section 153.004(b) indicates that a history can be established by just a single incident. *See* Tex. Fam. Code § 153.004(b) ("A history of sexual abuse includes *a* sexual assault . . . ." (emphasis added)). Our court has also held that "a single act of violence can amount to a history of physical abuse." *See Dewalt v. Dewalt*, No. 14-06-00938-CV, 2008 WL 1747481, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.) (citing *In re Marriage of Stein*, 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.)). Thus, even if the punching incident were isolated, its occurrence is enough to establish a history for purposes of Section 153.004(b).

Father raises several alternative arguments. He contends that the evidence of physical abuse is not credible because Mother never sought a protective order. Father bases this argument on Section 153.004(f), which provides that a court must consider whether a protective order has been rendered when deciding whether there is credible evidence of a history or pattern of physical abuse. Father appears to interpret this statute as saying that a protective order is a prerequisite to a finding of physical abuse. This interpretation finds no footing in the statute's plain text. The statute only requires the trial court to "consider" the existence of a protective

7

order. It does not preclude the trial court from making a finding in the absence of a protective order.

Father argues next that Section 153.004 is inapplicable because the trial court declined to find that family violence is likely to occur in the future. The likelihood of family violence occurring in the future is the measure by which protective orders are issued. *See id.* § 85.001. It is not the measure by which conservatorship is determined. The legislature could have incorporated the forward-looking, protective-order standard into Section 153.004, but it did not. We must presume that the omission was intentional. *See In re Ament*, 890 S.W.2d 39, 41 (Tex. 1994) (per curiam) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). Under Section 153.004, a trial court must consider whether there is credible evidence of physical abuse that occurred in the past. The trial court made a finding that physical abuse did occur, and that finding is supported by Mother's uncontested testimony that Father punched her in the face.

Father also contends that Section 153.004 should not apply because there is no evidence that he intended to harm Mother when he punched her. Father argues, instead, that he only intended to stop Mother from leaving his side. As before, Section 153.004 does not contain the requirement suggested by Father. It is sufficient under the statute to present credible evidence of past physical abuse without presenting additional proof of intent. Even if the statute did require proof of intent, the trial court could have inferred from the circumstantial evidence that Father actually intended to harm Mother.

By making an affirmative finding of family violence, the trial court removed the presumption that it is in the best interests of the children for both parents to be appointed as joint managing conservators. *See* Tex. Fam. Code § 153.131(b). That finding also deprived the court of the discretion to appoint joint managing

8

conservators. *Id.* § 153.004(b). The trial court's judgment to the contrary is therefore erroneous.

## II.    Remedy

In her post-submission brief, Mother asks that we reverse the trial court's judgment and render judgment naming her sole managing conservator of the two children. Mother argues that this result is compelled by our decision in *In re J.C.*, 346 S.W.3d 189 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In that case, we were asked to resolve a different kind of family dispute. There, a young girl's mother was deceased, and the custody battle was between the girl's father and her maternal grandparents. *Id.* at 191. We explained that, under Section 153.131(a), the trial court must presume that the interests of the child were best served by appointing the father as the sole managing conservator, and that if the grandparents wished to have custody over the father, then they carried the heavy burden of rebutting that parental presumption. *Id.* at 193–94. After reviewing all of the evidence, we determined that the grandparents had not met their burden, and that the trial court had abused its discretion by appointing the grandparents as managing conservators. *Id.* at 196. We reversed the trial court's judgment, applied the parental presumption, and remanded with instructions that the father be named sole managing conservator. *Id.*

Mother contends that she should be named sole managing conservator, but unlike in *J.C.*, there is no statute commanding that result because both parents are still alive in this case. The Family Code provides for a general presumption that both parents should be named joint managing conservators, but as we explained above, that presumption was removed by the trial court's finding of family violence. *See* Tex. Fam. Code § 153.131(b). In the absence of a presumption, the

trial court was required to choose which of the parents, if any, to be named sole managing conservator. *Id.* § 153.131(a).

Section 153.004 creates a presumption that it is not in the best interests of a child for a parent with a history of physical abuse to be appointed sole managing conservator. However, that presumption is "rebuttable." *Id.* § 153.004(b). Thus, Father is not rendered ineligible to be named sole managing conservator, even though Mother proved that he has a history of being physically abusive towards her. *See, e.g.*, *Stein*, 153 S.W.3d at 489 (reversing judgment and remanding to the trial court so that it may determine which parent to appoint as sole managing conservator, even though both parents admitted to being abusive towards each other).

We sustain Mother's first issue, reverse the trial court's conservatorship determination, and remand for a new trial on the question of conservatorship.

## DEATH PENALTY SANCTIONS

In Mother's second issue, we examine the trial court's decision to impose death penalty sanctions.

## I. Additional Facts

Mother pleaded causes of action for assault, battery, terroristic threats, and intentional infliction of emotional distress, among other torts that we need not discuss here. Mother sought actual damages as a result of her personal injuries. These damages included lost earnings, lost earning capacity, medical expenses, pain, suffering, mental anguish, and disfigurement. Alleging that Father had acted with actual malice, Mother also sought exemplary damages.

Shortly before trial, Father moved to exclude Mother's evidence of damages because Mother had "provided no amount or method for calculating damages."

Father asserted that he had requested such discovery in his requests for disclosure, but that Mother had not produced the discovery, in violation of Rule 194 of the Rules of Civil Procedure.

During a hearing on the motion to exclude, Father clarified that his objection was specific to economic damages. His counsel explained:

> In regard to the economic damages, I was on notice of their causes of action. I specifically requested, in my discovery request, the method and the amount for calculating those alleged damages. To this day, I have nothing on that, other than attorney's fees and medical records. I don't have a method or amount for calculating them.

After taking the motion under advisement, the trial court denoted the following order in its docket sheet: "[The Court] grants [Father's] request to strike claims for . . . assault, battery, terroristic threats, intentional [infliction of emotional] distress, [and] exemplary damages. [The Court] allows claims for actual damages for personal injuries and [attorney's] fees."

Mother filed a motion to reconsider, but the motion was denied. The case then proceeded to a trial on the merits, where Mother testified at great length about the punching incident, the injuries she sustained, and the medical bills she incurred.

After the close of evidence but before the trial court had rendered its judgment, Mother moved for leave to amend her pleadings. In her amended petition, Mother deleted all of the causes of action that the trial court had previously struck, except for the actions for assault and battery. Mother argued that the pleadings should conform with the judgment in the event that the trial court awarded her damages for either of those torts.

During a live hearing on the motion, the trial court expressed some surprise at Mother's amended pleadings. The court said, "So, you're asking to put the assault and battery back in after I struck it out; is that what you're

saying? . . . And you're basing that on the fact that I allowed testimony with regard to her injuries?"

The court took the matter under advisement and rendered its judgment a few days later. The judgment did not mention Mother's motion, nor did it expressly award any personal injury damages. The judgment included a Mother Hubbard Clause, which denied all relief that had otherwise been requested.

## II.    Analysis

We review a trial court's decision to impose sanctions for an abuse of discretion. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

A trial court may impose sanctions on any party that abuses the discovery process. *See* Tex. R. Civ. P. 215. If a party fails to comply with proper discovery requests, the court may enter orders "as are just," including "an order striking out pleadings or parts thereof." *See* Tex. R. Civ. P. 215.2(b)(5). For a sanction to be just, it must bear a direct relationship to the offensive conduct, and it must not be excessive. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).

A sanction that relates directly to the offensive conduct is one that is directed against the abuse and toward remedying the prejudice caused to the innocent party. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam). The sanction, in other words, must be visited upon the offender, and the court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both counsel and the party together. *Id.*

When assessing excessiveness, the punishment should always fit the crime, and sanctions should be no more severe than necessary to further the purposes of

sanctions generally. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A court must consider the availability of appropriate lesser sanctions, and, in all but the most egregious and exceptional cases, the court must first assess lesser sanctions before resorting to case-determinative or death penalty sanctions. *Id.* at 842.

Death penalty sanctions should only be imposed if a party's hindrance of the discovery process justifies a presumption that the party's claims or defenses lack merit. *See TransAmerican*, 811 S.W.2d at 918. If a party refuses to produce material evidence, the court may presume that an asserted claim or defense lacks merit and dispose of it. *Id.* However, sanctions that are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibility of discovery under the rules. *Id.*

Mother argues that death penalty sanctions were inappropriate in this case because they were imposed without notice. Mother asserts that Father never even requested sanctions in his motion to exclude evidence. In his brief, Father appears to agree with Mother, at least in part. He claims that he "did not request 'death penalty' sanctions," but he argues further that "the trial court did not order 'death penalty' sanctions." Both parties are incorrect.

Magic words are not required when requesting death penalty sanctions. Father did not ask for "death penalty sanctions" by that name, but he did request them in his motion to exclude evidence. In his prayer for relief, Father asked the trial court "to issue an order refusing [Mother] to present any evidence to support her claims for damages, and prohibiting her from introducing any evidence on her claims for . . . assault, battery, terroristic threats, intentional infliction of emotional distress, actual and exemplary damages for personal injuries, and reconstitution."

13

This request constituted a request for death penalty sanctions because it sought to preclude Mother from presenting the merits of her tort claims. *Cf. In re RH White Oak, LLC*, 442 S.W.3d 492, 501 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding [mand. denied]) (per curiam) (concluding that an order prohibiting a party from presenting evidence in support of various affirmative defenses constituted death penalty sanctions). We conclude that death penalty sanctions were imposed with notice to Mother.

Mother argues next that sanctions are unjust because she did not violate the rules of discovery, as Father had alleged in his motion to exclude evidence. Mother refers to Rule 194.2(d), which says that a party may request disclosure of "the amount and any method of calculating economic damages." *See* Tex. R. Civ. P. 194.2(d). Mother contends that because she sought non-economic damages, rather than economic damages, her failure to produce such discovery of economic damages cannot be a basis for imposing death penalty sanctions. Mother's argument is not entirely accurate.

"Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses. Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). As indicated above, Mother requested all of these damages. Thus, she made a claim for economic damages, and she was required under Rule 194.2(d) to produce discovery regarding those economic damages.

Our record does not contain all of Mother's discovery responses. We know, from a motion hearing, that she produced her medical records. Father's counsel admitted as much. Even if we assumed that Mother had not produced any discovery regarding her economic damages, we agree with Mother that death

14

penalty sanctions are clearly excessive. As a lesser sanction, for example, the trial court could have considered restricting Mother to putting on evidence of just her non-economic damages, without striking all of her tort claims in full. *Cf. Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 832 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that death penalty sanctions were excessive when, as a lesser sanction for failing to produce certain discovery regarding damages, the trial court could have limited a party's proof of damages to just a certain amount).

Father contends that the trial court did not actually impose death penalty sanctions because the court specifically allowed Mother to testify about her personal injuries. We disagree. The trial court permitted this testimony for purposes of the divorce action, not the tort actions. The trial court's order expressly struck Mother's torts, and in the post-trial hearing when Mother moved to amend her pleadings, the court reiterated that her torts had been struck.

Mother's alleged discovery violations do not justify a presumption that her tort claims lack merit. We therefore conclude that the trial court abused its discretion by imposing death penalty sanctions against her.

## III. Double Recovery

In his post-submission brief, Father points out that Mother received a disproportionate share of the community estate, and he suggests that part of Mother's recovery could have been based on the same conduct that is the subject of her torts. In the event that we remand for a new trial on those torts, Father asks that we also remand for a new trial on the division of the community estate.

In *Twyman v. Twyman*, the Supreme Court held that when a tort action is tried with the divorce, "it is imperative that the court avoid awarding a double recovery." *See* 855 S.W.2d 619, 625 (Tex. 1993). The court explained:

When dividing the marital estate, the court may take into account several factors, including the fault of the parties if pleaded. The trial court may also consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature to the property. However, a spouse should not be allowed to recover tort damages and a disproportionate division of the community estate based on the same conduct. Therefore, when a factfinder awards tort damages to a divorcing spouse, the court may not consider the same tortious acts when dividing the marital estate.

*Id.* (citations omitted).

During the trial on the merits in this case, Father proposed an unequal distribution of the community estate. He suggested that Mother should receive a positive estate valued at over $61,000, and that he should receive a negative estate with liabilities exceeding $49,000. Among other things, Father proposed that he should keep his retirement account and that both he and Mother should divide a portion of their credit card debt.

The trial court's division of property largely adhered to Father's proposal, except that the court awarded Mother the entirety of Father's retirement account and the court transferred all of the credit card debt to Father. The court also held that Father should be responsible for a loan to Mother's parents that Father did not originally calculate in his proposed division of property. In the end, Mother received a positive estate valued at over $82,000, and Father received a negative estate of more than $54,000.

We agree that Mother received a disproportionate share of the community estate. The trial court did not explain its reasons for the disproportionate share, but based on the evidence as a whole, there is a very real possibility that Father's role

16

in the punching incident influenced the court's division of property. In light of *Twyman*, we do not believe that Mother's tort actions can be separated from the property-dividing portion of the divorce without causing unfairness to Father. Therefore, we remand for a new trial on Mother's tort actions and a new trial on the division of the community estate. *See* Tex. R. App. P. 44.1(b).

## GROUND FOR DIVORCE

In her final issue, Mother argues that the trial court should have granted the divorce on the basis of cruelty, and not insupportability, because there was evidence establishing cruelty as a matter of law.

A trial court may grant a divorce because the marriage has become insupportable or because one spouse's cruel treatment towards the other spouse has made the marriage insupportable. *See* Tex. Fam. Code §§ 6.001, 6.002. The trial court has the discretion to choose among these and other fault-based reasons when deciding whether to grant a divorce. *See Clay v. Clay*, 550 S.W.2d 730, 734 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ).

Here, the trial court made a finding of fact that the marriage "has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation." Mother has not challenged that finding of fact, and there is legally and factually sufficient evidence to support that finding. The trial court could have concluded that the marriage should have been dissolved on the basis of cruelty, but it did not. The trial court did not abuse its discretion by granting the divorce solely on the basis of insupportability. *Cf. Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 WL 787828, at *2 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.) (holding that the trial court did not abuse its discretion by granting a divorce on the basis of insupportability instead of adultery); *Lisk v. Lisk*,

17

No. 01-04-00105-CV, 2005 WL 1704768, at *5 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (mem. op.) (same).

## CONCLUSION

The trial court's judgment is reversed in part and remanded for a new trial on the issues of conservatorship, Mother's tort actions, and the division of the community estate. In all other respects, the trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Donovan, and Wise.