**Affirmed and Memorandum Opinion filed October 7, 2021.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-20-00147-CV

### KAY LYNN MADORE AND BILL MADORE, Appellants

### V.

### JOSHUA STRADER AND SOMER NICOLE ZISSA, Appellees

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 17-DCV-240008**

## MEMORANDUM OPINION

Appellants Kay Lynn and Bill Madore ("Grandparents") appeal the portion of the trial court's order designating appellee Joshua Strader ("Father") as a joint managing conservator of K.M. ("the Child"). In two issues Grandparents assert (1) the trial court reversibly erred in failing to file findings of fact and conclusions of law; and (2) Father has a history of family violence, which prohibited the trial court from appointing him as a joint managing conservator. Having reviewed the record, we conclude the trial court's failure to file findings of fact and conclusions of law

was not harmful, and the trial court did not abuse its discretion in appointing Father as a joint managing conservator. We affirm the trial court's order.

BACKGROUND

## I.     Pretrial Proceedings

This case began when Father filed an original petition in which he alleged that the Child's parents would be separated and joint conservatorship was not in the best interest of the Child because the Child's mother, Sommer Zissa, ("Mother") had a history or pattern of committing family violence during the two-year period preceding the date of filing the petition. Grandparents filed a petition in intervention in which they alleged they were the Child's maternal grandparents and sought joint managing conservatorship because the appointment of the Child's parents as joint conservators would not be in the best interest of the Child. Grandparents alleged that appointment of the parents as joint managing conservators would significantly impair the Child's physical health or emotional development. Grandparents further alleged that Father engaged in a history or pattern of family violence and child neglect. Grandparents subsequently filed a first amended petition seeking joint managing conservatorship with Mother. Mother filed a counter-petition seeking sole managing conservatorship or, in the alternative, joint managing conservatorship with Father, with Mother having right to designate the primary residence of the Child.

## II.    Bench Trial

The trial court proceeded to trial without a jury. The record reflects that the Child was born in 2015 and was almost four years old at the time of trial. Much of the testimony at trial centered around both parents' struggles with alcohol abuse and their recovery efforts. Because Grandparents challenge the failure of the trial court to make a family violence finding, we focus on the parties' testimony about allegedly

2

violent events.

Father testified that he filed the petition seeking conservatorship of his daughter because Mother was "out of control" with "her drinking and everything." Father worked as a scaffold builder for an oil company. One day Father came home from work and discovered that Mother had run over his motorcycle with her car. That day Mother had threatened to lock Father out of the house and when Father came home, Mother's car was parked on top of his motorcycle. Father stayed three days in a hotel because Mother had indeed locked him out of the house. When the tow truck came to pick up Father's damaged motorcycle Mother tried to chase the tow truck driver before he was able to secure the motorcycle. The chase resulted in Mother's arrest for driving while intoxicated, possession of a controlled substance, and resisting arrest.

After Mother's arrest Father, with the help of a police officer, tried to pick up the Child from Grandparents' home, but Bill Madore, the Grandfather, refused to give up the Child and had Father escorted from the home by the police officer. Father filed his petition for conservatorship the next day.

Father testified to several incidents of Mother's physical violence, including:

- Pulling a gun out of the glove box and chambering a round while the Child was in the car;
- Punching Father in the face several times;
- Slamming Father into walls, ripping his clothes off, stealing Father's wallet and keys to his car; and
- Kneeing Father in the groin;

Father denied having ever assaulted Mother or having been violent with her in any way. Father testified that he attempted to defend himself by restraining Mother, but "never laid [his] hand on her." As an example, Father described a time

3

in which he was at work and Mother repeatedly called him and his boss to harass Father. Father told Mother that if she did not stop the harassing phone calls, he would have the mobile provider turn off her phone service.[1] When Mother continued the harassing phone calls Father had the mobile provider turn off Mother's service. Mother then started using Grandfather's phone to harass Father. Father's boss instructed him to leave work because "he had had enough." Father went home, intending to leave, but took a nap first. Father awoke from his nap to Mother punching him in the face. According to Father, Mother left both her children with Grandparents with the sole aim of fighting with Father. When Father tried to leave, Mother stood in the doorway, ripped his shirt off, and punched him in the face again. Barefoot, Father escaped when Mother took his boots to the kitchen to fill them with water in an effort to stop him from leaving.

Mother testified to a different version of events. Mother admitted sending too many texts to Father and, after dropping the children at Grandparents' house, Mother drove to Father's apartment to ask why he had turned off service to her phone. Mother testified that Father was asleep when she arrived and that neither one of them was intoxicated. Mother testified that Father woke up when she arrived and tried to go to the bathroom, but Mother blocked his way. Mother testified that Father shoved her into a wall while she was blocking access to the bathroom. Mother described "pushing and shoving," which ended with Father "slamming [her] down on the bed," and Father restraining Mother by sitting on her abdomen and kneeling on her arms. Mother testified that Father slapped her twice. Mother also testified that Father tried to choke her but she was able to break free and leave the apartment.

Father testified that since he filed the petition Mother had two new DWI

---

[1] Father paid the joint phone bill.

charges filed in different counties. Father produced arrest records for the DWI charges in addition to an arrest record in which Mother was charged with assaulting Father's niece. The second DWI arrest was the result of an accident where both parties were transported to the hospital. Medical records showed Mother's blood alcohol level at the hospital was 0.215.

Father admitted to previous alcohol abuse, but testified that he had been sober since January 29, 2017, two years before trial. In March 2017, after Father filed his petition, all parties were ordered to submit to regular drug screening. Father appeared at every drug screening and passed all of them.

Kay Madore's brother, Gary Post, testified that while attending a family vacation in New Braunfels in June 2015, two years before Father filed his petition, he witnessed Mother and Father in a "shoving contest." Post testified that Father pushed Mother into a wall. Post could not determine whether Mother or Father had begun the argument. During the argument, Post picked up the Child and removed her from the apartment where the altercation was happening. Father followed Post to the parking lot and became verbally abusive. Post testified that law enforcement was called and banned Father from the resort property. Post admitted he had not interacted with Father outside a court setting since that incident.

Father told a different version of the events in New Braunfels. Father testified that he and Mother had been arguing when Father decided to walk away from the altercation. While walking along the highway a patrol car drove by Father and asked why he was walking along the highway. Father explained the situation and the officer drove Father back to the apartment where the family was staying. Kay Madore met Father in the parking lot, and they walked upstairs to the apartment together. When they opened the door, they saw Mother and Bill Madore in a physical altercation. Father tried to break up the fight but both parties continued to be

5

aggressive. Bill grabbed Father's shirt and tried to pull Father toward him. Father responded by hitting Bill. Post was holding the Child and Father followed Post to the parking lot in an attempt to get the Child from Post. Another patrol car arrived in the parking lot and the officer told Father he did not plan to arrest him. At that time Bill and Mother were still arguing on the balcony of the apartment and could be seen from the parking lot. Father pointed to the fighting family members and told the police officer that peace would be kept more easily if the officer arrested him. The officer obliged, charged Father with public intoxication, and transported Father from the scene in the patrol car.

The record reflects Mother's testimony about another incident in which Mother testified that on February 2, 2016, she and Father were arguing at a bar. The argument became physical, and Father slammed Mother against a car. Bill Madore also testified that Father assaulted Mother in March 2017 resulting in Mother's hospitalization. This record reflects the March 2017 incident was the incident described in conflicting testimony by Mother and Father in which Father was sleeping in his apartment at the beginning of the incident.

After a bench trial the trial court signed an order appointing both parents and Grandparents joint managing conservators with Father having the exclusive right to designate the primary residence of the Child. The trial court also issued an expanded standard possession order, which permitted Mother to have possession the second, fourth, and fifth weekends during the school term. The expanded possession order accommodated Mother's desire to coordinate visitation with her other child.

## ANALYSIS

In two issues Grandparents appealed the trial court's order challenging (1) the trial court's failure to file findings of fact and conclusions of law; and (2) the trial court's appointment of Father as a joint managing conservator in light of evidence

6

of "an ongoing culture of family violence" between Father and Mother.

## I.      Grandparent Standing

Before addressing Grandparents' issues on appeal we address Father's standing argument. Father first argues that Grandparents' intervention failed as a matter of law because they did not establish all the required elements for their intervention. Grandparents intervened in Father's suit claiming general standing under Family Code section 102.004(a)(1) as the primary basis for their request to intervene in the conservatorship action.[2]

### A.      Statutory framework

Standing is a component of subject-matter jurisdiction without which courts lack authority to decide the merits of the parties' claims. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Issues of standing are reviewed de novo on appeal. *Id*. Standing is implicit in the concept of subject-matter jurisdiction, and is a threshold issue in a child custody proceeding. *In re Vogel*, 261 S.W.3d 917, 920 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Although no motion to strike Grandparents' intervention was filed in the trial court, we may address the issue for the first time on appeal. *See Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that court of appeals could address grandparents' standing to intervene sua sponte).

Texas confers standing to bring a suit affecting the parent child relationship ("SAPCR") to individuals who meet the statutory framework set out in the Family Code. *See id*. A party seeking conservatorship of a child must have standing to seek such relief. *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.]

---

[2] Contrary to Father's argument, the record reflects that Grandparents did not seek grandparent standing under section 153.433, which addresses rights to possession and access. Tex. Fam. Code § 153.433.

2011, orig. proceeding). Grandparents have standing to intervene in a SAPCR if they have standing to bring an original suit. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). A grandparent can meet the standing requirements to bring an original suit seeking managing conservatorship under Family Code section 102.003(a)(9) by having "actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *See* Tex. Fam. Code § 102.003(a)(9). A grandparent related by blood can also meet the standing requirement by providing "satisfactory proof to the court that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development . . . ." *See* Tex. Fam. Code § 102.004(a)(1). "Satisfactory proof" is based on a preponderance-of-evidence standard of facts then existing when the suit was filed. *In re K.D.H.*, 426 S.W.3d 879, 883–84 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis. *Id.* at 883. Ordinarily, standing is based on the existence of certain facts. *Id*. at 884. A grandparent seeking to intervene in a conservatorship suit and claiming standing under section 102.004(a)(1) of the Family Code need only file a petition and allege the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. *See id*. at 884. "In such a case, pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing." *Id*.

## B. Application

Here, Grandparents have standing to intervene in this SAPCR for

conservatorship under section 102.003(a)(9) of the Family Code. *See* Tex. Fam. Code § 102.003(a)(9) (providing that a nonparent other than a foster parent has standing if they "had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."). The Family Code recognizes that a narrow class of nonparents, who have served in a parent-like role to a child over an extended period of time, may come to court and seek to preserve that relationship. *In re H.S.*, 550 S.W.3d at 163. Under section 102.003(a)(9), a nonparent other than a foster parent has standing if they "had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Tex. Fam. Code § 102.003(a)(9). In determining standing under this section, the trial court "shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* Importantly, the "actual care, control, and possession" requirement does not turn on whether the nonparent has "ultimate legal authority" over the child. *In re H.S.*, 550 S.W.3d at 160. Rather, a nonparent has "actual care, control, and possession of the child" under section 102.003(a)(9) if the nonparent served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children. *In re H.S.*, 550 S.W.3d at 159. A determination of standing under Section 102.003(a)(9) is accordingly fact specific and determined on a case-by-case basis. *In re Shifflet*, 462 S.W.3d 528, 538 (Tex. App.— Houston [1st Dist.] 2015, orig. proceeding).

Here, the trial court entered temporary orders naming Grandparents temporary nonparent joint managing conservators with the right to physical possession of the child, duty of care, control, protection, and reasonable discipline of the child, duty

9

to provide the child with clothing, food, shelter, education, and medical, psychological, and dental care, and, inter alia, the right to consent for the child to medical, psychiatric, psychological, dental, and surgical treatment after consulting with the parent joint managing conservators. Moreover, the testimony at trial was undisputed that the Child lived in the home of the Grandparents for most of her life including the 90 days preceding the filing of the petition.

On this record, we conclude that Grandparents established standing to intervene in the SAPCR under the statutory framework of the Family Code. We turn now to Grandparents' issues on appeal.

## II. The trial court did not err in naming Father a joint managing conservator.

In Grandparents' second issue they assert the trial court erred by naming the parties joint managing conservators despite credible evidence of "an ongoing culture of family violence" between Father and Mother.

The child's best interest is always a trial court's primary consideration in determining conservatorship issues. Tex. Fam. Code § 153.002. The Family Code presumes that appointment of both parents as joint managing conservators or a parent as sole managing conservator is in a child's best interest, and it imposes a heavy burden on a nonparent to rebut that presumption. *See id.* § 153.131; *see also In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000) (explaining that natural parent "has the benefit of the parental presumption . . . and the nonparent seeking conservatorship has a higher burden"); *Whitworth*, 222 S.W.3d at 623 ("There is a strong presumption that the best interest of a child is served if a natural parent is appointed as managing conservator.").

The law presumes that the appointment of both parents as joint managing conservators is in the best interest of the child. *See* Tex. Fam. Code § 153.131(b).

10

That presumption is removed, however, if the trial court makes a finding of a history of family violence. *Id.*; *Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Section 153.004(b) states, "The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child[.]" Tex. Fam. Code § 153.004(b).

Grandparents contend that Section 153.004(b) precludes the trial court from appointing Father a joint managing conservator because credible evidence was presented that Father has a history of being physically abusive toward Mother. The trial court, however, did not make a finding of family violence in this case.

## A.     Standard of Review and Applicable Law

A trial court has broad discretion to decide the best interest of the child in matters involving custody, visitation, and possession. *In re Marriage of Harrison*, 557 S.W.3d 99, 120 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We review a trial court's conservatorship decision for an abuse of discretion. *Harrison*, 557 S.W.3d at 121. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or without reference to guiding rules or principles. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Baker*, 469 S.W.3d at 273. We make our determination based on a review of the entire record. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). In evaluating a trial court's exercise of discretion, we generally defer to the court's resolution of underlying facts and credibility determinations that may have affected its decision, and we do not substitute our judgment in its place. *See Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court is best able to observe and assess the witnesses' demeanor and credibility and to sense what may

11

not be apparent merely from reading the record on appeal. *Id.*

Under the abuse of discretion standard in this context, challenges to the legal or factual sufficiency of the evidence are not independent grounds of error, but are relevant considerations in assessing whether the trial court abused its discretion. *Harrison*, 557 S.W.3d at 121. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re R.T.K.*, 324 S.W.3d at 900–01.

When, as here, the trial court is the fact finder, it is the sole judge of the weight and credibility of the evidence; if it does not find credible evidence of a history of domestic violence, it is not bound by section 153.004. *Cf. Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.) ("Because the district court obviously did not find the testimony to be credible evidence of a history of sexual abuse, it was not bound by section 153.004(b)."). With these principles in mind, we turn to Grandparents' arguments in support of their second issue.

## B. Application

Grandparents assert that both Mother and Father testified to physical violence between them. Mother testified to one incident in which she alleged that Father shoved her into a wall, slammed her on the bed, and choked her. Father described a different version of the same events, testifying that he awoke to Mother punching him in the face and had to escape his own apartment due to Mother's violence. Grandparents also assert that the trial court should have believed Gary Post's version of the events on the New Braunfels vacation rather than Father's testimony. Mother also testified about physical violence in a bar fight.

In each of the instances of physical violence alleged in Grandparents' brief and reflected in the record, the parties provided materially different accounts of

events. The trial court is the sole judge of the weight and credibility of the evidence. *See Harrison*, 557 S.W.3d at 130. Because the trial judge could have reasonably found no credible evidence of a history or pattern of domestic abuse by Father, the record does not give rise to a rebuttable presumption that the appointment of Father as the sole managing conservator was not in the Child's best interest under section 153.004(b). *Id.*

Grandparents rely on *In re Marriage of Stein* for the proposition that Father cannot be appointed as a joint managing conservator because there was a history of family violence against Mother. *See In re Marriage of Stein*, 153 S.W.3d 485 (Tex. App.—Amarillo 2004, no pet.). In *Stein*, both parents admitted to committing family violence against each other, and the trial court appointed both to be joint managing conservators. *Stein*, 153 S.W.3d at 487. The conflicting evidence in this case distinguishes it from *Stein*, which involved undisputed evidence of family violence.

Grandparents also rely on *Watts v. Watts*, but it, too, is distinguishable. *See Watts v. Watts*, 396 S.W.3d 19 (Tex. App.—San Antonio 2012, no pet.). In *Watts*, "evidence was presented from which the jury could find either [father] or [mother], or both, had a history or pattern of physical abuse against the other." The jury found that mother "should be appointed as the sole managing conservator of [the parents'] two children." *Id.* at 21. The court in *Watts* recognized that "the trial court was prohibited from appointing [father] and [mother] as joint managing conservators if the jury found they both engaged in physical abuse against each other" and therefore, "because the jury found one parent [mother] should be appointed as sole managing conservator, the jury properly applied the law as given." *Id.* at 22.

Here, the evidence of family violence was heavily disputed; *Watts* does not support Grandparents' argument.

We conclude that Grandparents have not shown that the trial court abused its

discretion in designating Father as a joint managing conservator of the Child notwithstanding Grandparents' assertion that Father had a history or pattern of family violence. As the trial court could have reasonably credited Father's version of events, the trial court did not abuse its discretion. We overrule Grandparents' second issue.

### III. Grandparents were not harmed by the trial court's failure to file findings of fact and conclusions of law

In Grandparents' first issue they assert this case should be remanded to the trial court for findings of fact and conclusions of law. Grandparents timely requested findings of fact and conclusions of law after the trial court signed its order in the SAPCR. *See* Tex. R. Civ. P. 296. The trial court failed to make findings or conclusions within the allotted time, and Grandparents timely filed a notice of past-due findings of fact and conclusions of law. No findings or conclusions were ever made.

After judgment and upon proper request from a party, the trial court shall issue a written statement of its findings of fact and conclusions of law within twenty days of a party's request. Tex. R. Civ. P. 296; *Baltzer v. Medina*, 240 S.W.3d 469, 473 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In a SAPCR, a party may also request that the trial court specify in writing the specific reasons for deviating from the Family Code's standard possession schedule. *See* Tex. Fam. Code §§ 153.258(a), 153.312–.315. If the court does not file its findings, the requesting party shall file a notice of past due findings within thirty days of the first request giving the trial court forty additional days to file its findings. Tex. R. Civ. P. 297. The trial court is required to respond to these requests, and failure to do so is presumed harmful unless the appellate record "affirmatively shows that the complaining party has suffered no injury." *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). An

14

appellant is harmed if there are two or more possible grounds on which the court could have ruled and the appellant is left to guess the basis of the trial court's ruling effectively preventing the appellant from properly presenting their case on appeal. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014); *Baltzer*, 240 S.W.3d at 473.

Grandparents assert they were harmed by the trial court's failure to file findings and conclusions because the trial court's failure precluded them from "concisely presenting their case to this Court." Grandparents, however, only challenged the trial court's failure to make a finding of family violence, which would preclude Father's appointment as a joint managing conservator.

Grandparents assert one issue for setting aside the trial court's appointment of Father as a joint managing conservator: that the evidence of a history of family violence and physical abuse in this case rebutted section 153.131's parental presumption, precluded appointment of Father as a joint managing conservator, and created a presumption that it was not in the Child's best interest for Father to be appointed as a managing conservator. *See* Tex. Fam. Code §§ 153.004(b), 153.131. Under the Family Code the trial court was prohibited from appointing Father as a joint managing conservator if the court found credible evidence of a history or pattern of family violence. After hearing the evidence, the trial court appointed Father a joint managing conservator.

The record affirmatively reflects that Grandparents were not impaired in bringing their appeal because of confusion over the trial court's implied finding. Viewed in that posture, we hold that the trial court's failure to file findings and conclusions on whether credible evidence supported a finding of family violence was not harmful and abatement of this case is not necessary. *See Goggins v. Leo*, 849 S.W.2d 373, 379–80 (Tex. App.—Houston [14th Dist.] 1993, no writ) (trial

15

court's failure to file findings of facts and conclusions of law in forcible detainer action involving condominium did not harm defendant when there was only one possible theory of recovery for plaintiff and implied findings necessary for recovery were supported by evidence).

Grandparents also challenge the trial court's failure to file findings and conclusions pursuant to section 153.258 of the Family Code because the order varied from the standard possession order without a written explanation. We note, however, that the trial court stated its reason for deviation from the standard possession order on the record and Grandparents did not object to the deviation from the standard possession order. The court's oral findings have probative value as long as they do not conflict with those in a separate document and Grandparents were not harmed by the court's failure to reduce its oral finding to writing. *See Baltzer*, 240 S.W.3d at 474 (trial court's failure to reduce oral findings to writing was harmless). We overrule Grandparents' first issue.

## CONCLUSION

Having overruled Grandparents' issues on appeal we affirm the trial court's judgment.


/s/     Jerry Zimmerer
Justice



Panel consists of Justices Wise, Bourliot, and Zimmerer.