**AFFIRM; and Opinion Filed August 11, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00628-CV

### IN THE INTEREST OF K.A.K., A.A.K., A.A.K., K.A.K., AND A.M.A, MINOR CHILDREN

### On Appeal from the 255th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF-11-18669

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

S.K. (Father) appeals the Final Decree of Divorce rendered by the trial court. We affirm.

Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

E.A. (Mother) and Father were married in Sudan in 2002. They moved to the United States in 2006 with their two oldest children and with A.M.A., the child of a relative of Father.[1] The two younger children of the marriage were born in the United States.

During their marriage, Mother and Father both worked outside of the home. They filed separate tax returns, and each received a tax refund in 2011. Among the issues at trial and on appeal is the disposition of Mother's refund of approximately $7,000.

---

[1] A.M.A. is identified as Father's "niece" at various times in the record, but also at other times as the child of Father's cousin. In any event, the parties agree that A.M.A. is a relative of Father's who came to the United States with the family and has been living with them ever since.

Mother and Father agree that they had arguments in the summer of 2011 about the refund and other matters. But each testified that the other resorted to physical violence during the arguments. After an argument in July 2011, Mother called the police, who arrested Father. No criminal charges were filed against Father as a result of the incident. Mother sought and obtained a temporary protective order against Father in September 2011. Father, in turn, filed for divorce and pleaded for a protective order against Mother,[2] although his petition for divorce recited that a protective order had already been entered against him. Mother subsequently filed a counter-petition, which recited that a protective order was entered against Father on January 6, 2012.

The case proceeded to trial before the court. The trial court heard testimony from both Mother and Father. In addition, each party called several fact witnesses to testify. The evidence developed at trial reflected that Mother and the five children sought help from a community group because Father had taken all of the family's furniture and possessions, including the children's clothing, when the parties separated. The trial court signed the decree of divorce on April 24, 2014, appointing Mother sole managing conservator and Father possessory conservator of the children. The decree includes findings of family violence against Father and orders supervised visitation. The decree also orders Father to pay child support, and to pay Mother the sum of $7,000. This appeal followed.

**STANDARDS OF REVIEW**

We review the trial court's rulings for abuse of discretion. *See In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (most appealable issues in family law cases are evaluated under abuse of discretion standard). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles.

_____

[2] No protective order was ever entered against Mother.

*Id.* In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review. *Id.* As a result, insufficiency of the evidence is not an independent ground of reversible error, but instead constitutes a factor relevant to our assessment of whether the trial court abused its discretion. *Id.* To determine whether the trial court abused its discretion we consider whether the trial court (i) had sufficient evidence upon which to exercise its discretion and (ii) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Id.*

A trial court's findings are reviewable for legal and factual sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 382–83 (Tex. App.—Dallas 2013, no pet.).

As the fact finder in a bench trial, a trial court may choose to believe one witness and disbelieve another. *See In re J.A.L.*, No. 05-12-00298-CV, 2013 WL 4399192, at *3–4 (Tex. App.—Dallas Aug. 15, 2013, no pet.) (mem. op.) (citing *City of Keller,* 168 S.W.3d at 819). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their

testimony. *Id.* We will not disturb the trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *City of Keller*, 168 S.W.3d at 819.

**DISCUSSION**

In seven issues, Father contends that the trial court erred by failing to appoint him sole managing conservator of the children, making a finding of family violence, appointing Mother managing conservator of A.M.A., ordering Father to pay $7,000 to Mother, and limiting the examination of witnesses and presentation of evidence at trial.

## 1. Conservatorship and finding of family violence

### A. Prior protective order

Father's first four issues address the trial court's rulings regarding conservatorship of the children. In his third issue, Father contends the trial court erred by determining "solely on the basis of a protective order issued by another court that [Father] was precluded from being named conservator of the children." In his fourth issue, Father argues that the trial court erred when it made a finding of family violence by Father on the basis of a protective order that was not admitted into evidence. Father takes issue with the trial court's statements that because a protective order had been issued against Father, the issue of prior family violence was "already decided," and the trial court could not appoint him "even as a joint managing conservator." Father further complains that the protective order was neither offered nor admitted into evidence at trial. Father also cites the trial court's statement that because "[t]here is an order that has a finding . . . I don't have to go back and decide whether or not there was family violence that he committed against the wife. There is a court order that I will take notice of . . . . I want [Father] to understand that . . . there is already a finding and he's saddled with that finding."

Citing *In re J.C.*, 346 S.W.3d 189, 192–93 (Tex. App.—Houston [14th Dist.] 2011, no pet.), Father also argues that because the protective order was not admitted into evidence, the

trial court erred by taking judicial notice of it. In *In re J.C.*, the court explained that "the trial court may not judicially notice any testimony from a prior hearing on a temporary order unless such testimony is properly admitted into evidence." *Id.* at 192.

We conclude that there was no error in the trial court's conservatorship rulings. Family Code section 153.004 limits a trial court's discretion in determining the appointment of conservators where there is a history of domestic violence. The court "may not appoint joint managing conservators" if "credible evidence is presented of a history or pattern" of physical abuse by one parent against the other parent. *See* TEX. FAM. CODE ANN. § 153.004(b) (West 2014). The court "shall consider evidence of the intentional use of abusive physical force . . . by a party directed against the party's spouse . . . committed within a two-year period preceding the filing of suit or during the pendency of the suit." *Id.*, § 153.004(a). In determining whether there is credible evidence of a history or pattern of past or present abuse, "the court shall consider" whether a protective order was rendered against the parent during the two-year period prior to filing of the suit or during the pendency of the suit. *Id.*, § 153.004(f). Father's own petition for divorce recited that a protective order had been entered against him, and the trial court was required to consider that fact. *See id.*

And although the trial court made statements at the outset of the trial that the issue of family violence was "already decided," the court also heard evidence at trial of family violence by Father and made explicit findings, without referencing any previous protective order, that Father "has a history or pattern of committing family violence during the two-year period preceding the filing of this suit or during the pendency of this suit"; that "credible evidence has been presented that [Father] has a history or pattern of physical abuse directed against [Mother]"; and that Father "has a history of domestic violence." Mother testified that Father "slapped me, pushed me onto the ground, choked me, kicked me, and then dragged me on the ground in front

of the children." She testified to other incidents of Father's violence toward her that occurred in 2011, including hitting her with a stick, punching her, and kicking her. Although Father denied physical violence against Mother, the trial court was "in the best position to observe the demeanor and personalities of the witnesses," including "forces, powers, and influences that cannot be discerned by merely reading the record." *In re A.R.*, 236 S.W.3d 460, 479 (Tex. App.—Dallas 2007, no pet.). There was sufficient evidence to support the trial court's findings of family violence even absent the prior protective order. Having made these findings, the trial court had no discretion to appoint joint managing conservators. TEX. FAM. CODE ANN. § 153.004(b). We overrule Father's third and fourth issues.

### B. Credibility of evidence

In his first and second issues, however, Father contends that the trial court erred by finding that Father had a history of domestic violence and that Mother did not. He argues that "the entire record shows" that any violence on his part was "fabricated" by Mother, and that Mother's own violence toward him, as well as threats to kill herself and her children, "made it in the children's best interest" to appoint Father as sole managing conservator of the children.

To attack Mother's credibility, Father relies heavily on prior testimony of the children's former school principal at the hearing in criminal district court which resulted in the entry of a protective order against Father. In her affidavit supporting her request for the protective order, Mother stated that she was frightened of Father after a conversation with the principal. According to Mother, the principal told her that Father had reported Mother was dead. The principal denied telling Mother this. The record also showed, however, that Mother's understanding of English is limited (in fact, she testified at trial through an interpreter). Mother testified at the prior hearing she was not sure that the person with whom she spoke was the principal, but she confirmed that someone at the children's school made the statement to her.

The principal's testimony from the prior proceeding also reflected her acknowledgement that someone else at the school could have spoken with Mother without the principal's knowledge.

Father also points to Mother's statements in the affidavit that (1) Father "became enraged" after Mother asked for money to buy necessities for the children; and (2) Father kept her isolated from her family and other Sudanese in the community. Father argues that Mother's statements are not credible because Mother had a debit card for their joint bank account that she could have used to buy necessities for the children herself, without asking him; Mother actually wanted the money to rent an apartment for herself and the children; Mother was a "church leader" and a tribe officer; and Mother traveled to New York to attend a wedding in June 2011.

Father also contends that Mother's testimony about Father's alleged violence is not credible, compared with his own testimony about their arguments, Father's lack of any criminal record of domestic violence, and the testimony of other fact witnesses such as Father's brother and longtime friends denying that Father is violent. He points to testimony that Mother threatened on more than one occasion to kill herself and the children to argue that Mother is "an unfit parent." And Father relies on testimony of one his friends that Mother slapped the friend during an argument.

But there was also evidence that Father controlled the family's finances and called family "meetings" according to Sudanese custom in which Father, his brother, and other Sudanese males made decisions about the family finances and other family matters. There was evidence that when the parties separated, Father left Mother and the children in a "completely empty apartment," according to two witnesses who provided assistance to mother and the children, with "no clothes, no furniture, no food, nothing, including for the children." Mother and the children were "sleeping on the floor with no mattresses," and had only "the clothes on their backs and a few blankets." One of these witnesses testified that although she did not personally witness

violence by Father against Mother, she did observe a "severe" and "dramatic" bite on Mother's left shoulder, as well as severe swelling and bruising on Mother's face and neck.

The trial court was required to consider "evidence of the intentional use of abusive physical force" by a party directed at a spouse, and could not appoint Father a joint managing conservator if "credible evidence" was presented of a history of physical abuse "by one parent against the other parent." TEX. FAM. CODE ANN. § 153.004(a), (b). The record reflects such evidence.

In addition, as we have explained, the finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See In re J.A.L.*, 2013 WL 4399192, at *4. When the evidence is conflicting, we must presume the fact finder resolved the inconsistency in favor of the prevailing party if a reasonable person could do so. *City of Keller*, 168 S.W.3d at 821. Demeanor is especially important where, as here, the trial court's decision turned on resolving conflicts in the testimony of the children's parents. *See In re A.M.*, 418 S.W.3d 830, 844 (Tex. App.—Dallas 2013, no pet.) (trial court in best position to determine best interest of child because it faced the parties and their witnesses, observed their demeanor, and had opportunity to evaluate claims made by each parent). We overrule Father's first and second issues.

### 2. Conservatorship of A.M.A.

In his fifth issue Father contends the trial court erred by naming Mother as sole managing conservator of A.M.A. He argues that (1) A.M.A.'s father gave custody to Father; (2) Mother is not related to A.M.A., and Father is a relative; and (3) in light of Father's divorce, A.M.A.'s father has now designated Father's brother (Brother) to have custody of A.M.A. At trial, Father sought to introduce an affidavit of A.M.A.'s father giving custody of A.M.A. to Father. At a subsequent hearing addressing domicile and international abduction issues, Father sought to

introduce a more recent affidavit from A.M.A.'s father naming Brother and his wife to have exclusive custody of A.M.A. in light of Father's divorce. The trial court excluded both affidavits from evidence.

Although A.M.A. is not the child of either Father or Mother, the trial court conferred standing to Mother as to A.M.A. because Mother established that she "is a person other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date [of the] filing of the petition for divorce," as expressly provided in Family Code section 102.003(a)(9). Mother therefore had standing to file a suit affecting the parent-child relationship as to A.M.A., as the trial court found. *See* TEX. FAM. CODE ANN. §§ 102.001–102.003 (West 2014); *see also In re M.P.B.*, 257 S.W.3d 804, 808–09 (Tex. App.—Dallas 2008, no pet.) (applying section 102.003(a)(9)).

The trial court then was presented with the issue of A.M.A.'s conservatorship. Given the trial court's findings of family violence, Father could not be appointed joint managing conservator of A.M.A., regardless of A.M.A.'s father's affidavit stating that he gave custody of A.M.A. to Father. *See* TEX. FAM. CODE ANN. § 153.004(b). Even a child's own parents may not be appointed joint managing conservators if there are findings of family violence against them. *See id.* And although Father is related to A.M.A. and Mother is not, Father cites nothing in the Family Code giving him a greater right, as A.M.A.'s relative, to be appointed her managing conservator despite the family violence findings.

Further, regardless of whether the second affidavit of A.M.A.'s father was admitted into evidence or not, the trial court could not appoint Brother and his wife as managing conservators where there was no pleading, evidence, or finding regarding whether such appointments would be in A.M.A.'s best interest. TEX. FAM. CODE ANN. § 153.002 (West 2014) (best interest of child

"shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child").[3] We overrule Father's fifth issue.

### 3. Money judgment against Father

In his sixth issue, Father complains of the money judgment of $7,000 awarded to Mother. He argues that the funds comprising the money judgment were community property, and Father spent the funds on community obligations. Father argues there was no dispute as to the source of the money; it was Mother's 2011 income tax refund and therefore was community property. He contends that one half of the refund "belonged" to him, and he spent more than $3,500 on community obligations. Father testified he used the money to pay fees to store the family's furnishings, Mother's car insurance, and Mother's $75.00 traffic ticket. He concludes that because he paid more than $3,500 on these community obligations, the entire $7,000 money judgment against him should be reversed.

We disagree. The trial court must make a "just and right" division of the marital estate in a decree of divorce. *See* TEX. FAM. CODE ANN. § 7.001 (West 2006) (in decree of divorce, court shall order division of parties' estate in manner court "deems just and right, having due regard for the rights of each party and any children of the marriage"). The trial court may determine that one party is entitled to a greater share of the community to effect a just and equitable division. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d at 384.

---

[3] We note that the decree of divorce provides that Mother and Father are permanently enjoined from allowing any of the five children "to have any contact with" Brother. Mother testified that Brother participated in some of the violence against her.

Here, there was evidence that in the same year, Father received a tax refund in a greater amount than Mother's from his own earnings, so the $7,000 was somewhat less than half of the parties' total tax refunds. The record reflects that the evidence was disputed regarding the disposition of both refunds. The trial court in its discretion could resolve these conflicts in the evidence against Father, and could decide that a "just and right" division included awarding the $7,000 to Mother. *See id.* We overrule Father's sixth issue.

### 4. Time limitations at trial

In his seventh issue, Father contends the trial court committed reversible error by limiting the trial to two hours per side. Although Father concedes a trial court has "great latitude in setting the time allotted for trials," he argues that there was an abuse of discretion here, given the large number of witnesses and Mother's need for an interpreter.

The Texas Rules of Evidence apply in suits affecting the parent-child relationship. TEX. FAM. CODE ANN. § 104.001 (West 2014). Under rule 611 of the Texas Rules of Evidence, the trial court should "exercise reasonable control" over the interrogation of witnesses and presentation of evidence. *See* TEX. R. EVID. 611(a), 60 TEX. B.J. 1129 (1998, amended 2015). "A trial court has the authority to control the presentation of evidence so as to avoid needless consumption of time." *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied).

The issues to be decided by the trial court included the conservatorships of the five children and the division of the parties' property. The most hotly contested issue was whether either Mother or Father had a history of domestic violence. The key witnesses to this issue were Mother and Father themselves. Neither party sought to offer expert testimony regarding the best interests of the children or any other issue. And the only contested property was the $7,000 tax refund. Mother and Father were the key witnesses regarding the source and disposition of the

funds.  Although the nonparty witnesses provided some additional context regarding the disputed issues, the trial court within its discretion could determine that hearing four hours of evidence primarily from the parties themselves would provide sufficient evidence to decide the contested issues, especially in a trial before the court.  *See* TEX. R. EVID. 611; *In re M.A.S.*, 233 S.W.3d at 924 (no abuse of discretion by setting time limitation on mother's testimony in child custody case); *see also Hopper v. Brittain*, 612 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1981, no writ) (in bench trial it is trial judge who observes appearance and demeanor of witnesses).  We overrule Father's seventh issue.

### CONCLUSION

Having overruled Father's seven issues, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

140628F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.A.K., A.A.K., A.A.K., K.A.K., and A.M.A, MINOR CHILDREN,

No. 05-14-00628-CV

On Appeal from the 255th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-11-18669.
Opinion delivered by Justice Brown;
Justices Bridges and Fillmore participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee E.A. recover her costs of this appeal from appellant S.K.


Judgment entered this 11th day of August, 2015.

–13–