**Reversed and Rendered and Opinion filed July 14, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00409-CV

## IN THE INTEREST OF N.H., A CHILD

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-36800**

## OPINION

May a trial court overrule the wishes of a parent and award visitation rights to a nonparent who has no biological or legal relationship to the child? On the facts of this case, our answer is "no."

The trial court reached the opposite conclusion after making a finding that the parent was unfit, but that finding has no evidentiary support. Moreover, the trial court's finding of unfitness is inconsistent with a separate finding that the parent should be awarded managing conservatorship.

The trial court also found that the child would suffer significant effects if the nonparent were denied visitation. In making that finding, the trial court appeared to

invoke the statutory standard that applies to grandparents who seek visitation of their grandchildren. The nonparent here was not a grandparent, and there is no comparable statute applicable to nonparents who have no biological or legal relationship to the child. Nevertheless, we agree with the trial court that such nonparents should be expected to meet the same demanding burden of proof as grandparents in matters concerning visitation. In other words, to be entitled to visitation, the nonparent must establish at a minimum that the denial of visitation would significantly impair the child's physical health or emotional well-being. But as we explain further below, the nonparent here failed to carry that heavy burden.

We accordingly reverse the trial court's order and render judgment denying the nonparent's petition.

## BACKGROUND

The parties in this case are two women who were formerly in a dating relationship. For ease of reference, we identify them in this opinion as the Mother and the Ex-Girlfriend.

During their relationship, the Mother became pregnant with the assistance of reproductive technology. The Ex-Girlfriend was closely involved in the pregnancy. The Ex-Girlfriend helped select the anonymous sperm donor, she attended many doctor's appointments, and she even paid for some of the genetic testing.

The Mother gave birth to a daughter, whom we identify as the Child. The Ex-Girlfriend was present for the delivery and cut the umbilical cord. The Ex-Girlfriend was given a hospital band and treated like a parent, but the Ex-Girlfriend was not listed on the Child's birth certificate, and the Ex-Girlfriend never signed any sort of acknowledgment of parentage.

The Ex-Girlfriend, the Mother, and the Child lived together as a family in the Ex-Girlfriend's house. The Ex-Girlfriend saw the Child on a daily basis and fulfilled all of the duties of a parent. The Ex-Girlfriend bathed, fed, and nurtured the Child. She took the Child to daycare. The Mother also held the Ex-Girlfriend out to the public as the Child's second mom. The Mother and the Ex-Girlfriend had discussions about marriage and adoption, but neither of those events ever occurred.

The Mother and the Ex-Girlfriend ended their relationship when the Child was approximately sixteen months old. The Mother moved out of the Ex-Girlfriend's house and into her own house, but the Mother continued to allow the Ex-Girlfriend to visit the Child. These visitations were not on a regular schedule. The Mother would sometimes withhold the Child from the Ex-Girlfriend for various reasons. One of these reasons was that the Mother was upset that the Ex-Girlfriend was dating another woman. Another reason was that the Mother wanted to gradually reduce the Ex-Girlfriend's presence in the Child's life so that the separation would not seem so abrupt.

About a month after the breakup, the Ex-Girlfriend filed this suit affecting the parent-child relationship. The Ex-Girlfriend requested joint managing conservatorship, with the Mother having the exclusive right to determine the Child's residence. In the alternative, the Ex-Girlfriend requested that the Mother should be appointed as the sole managing conservator, and that the Ex-Girlfriend should be appointed as the possessory conservator.

In 2018, before the Child's second birthday, an associate judge conducted an evidentiary hearing to consider the issuance of a temporary order. At the conclusion of that hearing, the associate judge appointed the Mother as the temporary sole managing conservator and the Ex-Girlfriend as the temporary possessory conservator. The Mother requested a de novo hearing before another judge, and

3

following another evidentiary hearing, that other judge confirmed the associate judge's order. In neither hearing did the Ex-Girlfriend ever contend that the Mother was an unfit parent.

In 2021, after the Child's fourth birthday, the case was tried to the bench. Breaking with her previous testimony, the Ex-Girlfriend opined that the Mother was not fit, at least in 2019 and 2020. When asked whether she believed that the Mother was currently able to meet the Child's needs, the Ex-Girlfriend responded, "I don't know."

The Mother testified that she still wants the Ex-Girlfriend to have an active role in the Child's life. However, the Mother insisted that she—and not the court— should have the power to decide when those visitations can occur. The Mother opined that she was a fit parent and that she was more than capable of making the appropriate decisions about visitation herself. Indeed, the Mother emphasized that she disregarded the advice of her lawyers and permitted the Ex-Girlfriend to have visitation with the Child after the Ex-Girlfriend filed this suit and before the trial court issued its temporary order.

The judge entered a final order that tracked the temporary order. In other words, the judge appointed the Mother as the sole managing conservator and the Ex-Girlfriend as the possessory conservator with a standard possession order. The Mother did not request child support, but even if she had, the trial judge could not have ordered it, absent some agreement, because only a parent can be obligated to pay child support.

The trial judge also signed findings of fact and conclusions of law. Even though the judge found that the Mother's appointment as the sole managing conservator was in the Child's best interest, the judge separately found that the Mother was an unfit parent.

4

The Mother now challenges this order.

## STANDING

The Ex-Girlfriend's standing has not been challenged on appeal, but because standing is jurisdictional, this court may address it on its own.

The Texas Family Code provides that a person may bring an original suit affecting the parent-child relationship, provided that the person "has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *See* Tex. Fam. Code § 102.003(a)(9).

The Ex-Girlfriend satisfied this statutory requirement. She lived with the Child for the first sixteenth months of the Child's life, during which time she fulfilled all of the duties and responsibilities of a parent. The Ex-Girlfriend also filed her suit less than ninety days after the Mother and the Child moved out of the Ex-Girlfriend's house. Based on these facts, we conclude that the Ex-Girlfriend has standing. *See In re H.S.*, 550 S.W.3d 151, 160 (Tex. 2018) ("In sum, a nonparent has 'actual care, control, and possession of the child' under section 102.003(a)(9) if, for the requisite six-month time period, the nonparent served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children.").

## THE FIT-PARENT PRESUMPTION

The trial court is afforded wide latitude when establishing the terms and conditions of conservatorship. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021). Because conservatorship decisions are "intensely fact driven," the trial court must normally balance and consider numerous factors. *See Lenz v. Lenz*, 79 S.W.3d 10,

19 (Tex. 2002). But the primary factor must always be the best interest of the child. *See* Tex. Fam. Code § 153.002.

When making its best-interest determination, the trial court must give "special weight" to the fundamental liberty interest of parents to make decisions concerning the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 66, 70 (2000) (plurality op.). This special weight is a legal presumption that a fit parent acts in the best interest of his or her child. *Id.* at 68–69. And this fit-parent presumption applies in any proceeding in which a nonparent seeks conservatorship or access over the objection of a parent. *See In re C.J.C.*, 603 S.W.3d 804, 817 (Tex. 2020) (orig. proceeding).

The trial court here believed that the Ex-Girlfriend developed enough evidence to overcome the fit-parent presumption. In its findings of fact and conclusions of law, the trial court found both that the Mother was unfit, and that the Child would suffer significant effects if the Ex-Girlfriend were denied visitation. We review these findings for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2017).

## THE FITNESS OF THE MOTHER

We begin with the finding that the Mother is unfit, which the Mother argues is unsupported by the evidence. The Mother does not specify whether she is making a legal or factual sufficiency challenge, but the tenor of her argument suggests that she is claiming that there is legally insufficient evidence to support the trial court's finding.

As a threshold matter, the Ex-Girlfriend contends that the Mother waived this argument by neither objecting nor requesting amended or additional findings of fact in the trial court. But legal sufficiency challenges may always be raised for the first

6

time on appeal. *See* Tex. R. App. P. 33.1(d). And even though legal sufficiency is not an independent ground of error in family law cases, it is a factor to consider when deciding whether the trial court abused its discretion. *See In re N.H.N.*, 580 S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We accordingly consider the Mother's argument.

The test for fitness is whether the parent can adequately care for the child. *See C.J.C.*, 603 S.W.3d at 818 ("Since *Troxel*, we have consistently applied *Troxel*'s holding that 'so long as a parent adequately cares for his or her child (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family.'").

When deciding whether there is legally sufficient evidence that the Mother is not fit under this test, we review the record in the light most favorable to the trial court's finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is sufficient to support the finding if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 822. The evidence is insufficient to support a finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

The Ex-Girlfriend did not expressly testify that the Mother was currently unfit at the time of trial, but the Ex-Girlfriend questioned the Mother's ability to parent the Child based on three broad "concerns."

7

First, the Ex-Girlfriend expressed a concern that the Mother had used the Child as a pawn. This concern appears to refer to the occasions when the Mother became angry with the Ex-Girlfriend and chose to withhold the Child from the Ex-Girlfriend. But even if we take the Ex-Girlfriend's concern as true, it does not demonstrate that the Mother is failing to adequately care for the Child. Moreover, the occasions referenced by the Ex-Girlfriend predated the temporary order, and the evidence showed that, after a cooling-off period, the Mother always reinitiated visits between the Child and the Ex-Girlfriend.

Second, the Ex-Girlfriend expressed a concern that the Mother was verbally and emotionally abusive. This concern appears to refer to the text messages between the parties, which exhibited a toxic relationship. Nevertheless, the text messages only established that the parties were abusive towards each other. There was no evidence that the Mother has ever been abusive towards the Child.

Third, the Ex-Girlfriend expressed a concern that the Mother has a problem with drinking, pills, and depression. The Ex-Girlfriend referenced once incident where the Mother was arrested for driving while intoxicated, but the Child was not a passenger in the Mother's vehicle, nor was anyone ever injured in that incident. The Ex-Girlfriend also referenced an incident where the Mother consumed vodka and Xanax together, which resulted in the Mother exhibiting unusual behavior. Again, no one was ever injured in that incident. The Ex-Girlfriend also referenced an incident where the Mother expressed a suicidal thought. But again, no one was ever injured, and the evidence was uncontroverted that the Mother had stopped drinking months before the trial began and is currently seeing a therapist. These incidents do not show that the Mother is unfit. *Cf. Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990) (evidence that the mother visited a psychiatric hospital did not constitute evidence that placement with the mother would emotionally impair

the child); *Madore v. Strader*, No. 14-20-00147-CV, 2021 WL 4617936, at \*2 (Tex. App.—Houston [14th Dist.] Oct. 7, 2021, no pet.) (mem. op.) (the father was appointed as a joint managing conservator with the right to determine the child's primary residence, despite his admission of previous alcohol abuse).

The Ex-Girlfriend had personal knowledge of all of the aforementioned incidents at the time that they occurred, but since the breakup, the Ex-Girlfriend has never sought the appointment of an amicus attorney to represent the interests of the Child. The Ex-Girlfriend has never contacted the authorities to ask for a welfare check—not even the Mother's new neighbor, who is a CPS caseworker and mandatory reporter. Nor has the Ex-Girlfriend ever called for any sort of custody evaluation, alcohol assessment, or psychological evaluation.

The trial court's finding that the Mother is unfit is inconsistent with its other finding that the Mother's appointment as sole managing conservator is in the Child's best interest. Those findings cannot both be true. *See* Tex. Fam. Code § 153.131(a) (providing that the trial court must appoint a parent as managing conservator unless the court determines that the appointment would significantly impair the child's physical health or emotional development).

The trial court's appointment of the Mother as sole managing conservator is in keeping with the evidence that she can adequately care for the Child. This evidence demonstrated that the Mother owns her own home. She is married to another woman. She is employed by a large oil and gas company (the same as the Ex-Girlfriend). She feeds and clothes the Child. She takes the Child to medical appointments. She has enrolled the Child in daycare. Even the Ex-Girlfriend testified that the Mother is a "great parent." This evidence conclusively established the opposite of unfitness.

We conclude that the trial court abused its discretion when it found that the Mother was unfit.

## THE EFFECT OF THE MOTHER'S FITNESS

The Mother argues that if she is a fit parent, as the evidence conclusively established, then the trial court had no discretion but to defer to her wishes and to deny the Ex-Girlfriend's request for conservatorship. In support of this argument, the Mother relies on this court's decision in *In re S.D.*, No. 14-20-00851-CV, 2021 WL 3577852 (Tex. App.—Houston [14th Dist.] Aug. 10, 2021, orig. proceeding) (mem. op.) (per curiam).

The Mother seems to construe *S.D.* as holding that the wishes of a fit parent are absolute, but that construction is not consistent with our overall analysis in that case, or with the authorities to which we directly cited.

*S.D.* involved a dispute between a parent and grandparent, and we ultimately held that the "Grandmother did not overcome the fit-parent presumption that Mother acts in the best interest of the child." *Id.* at *6. Even though we concluded that the grandparent had failed to carry her burden of proof, we directly recognized that the fit-parent presumption was rebuttable, which is contrary to a rule that the wishes of a fit parent are absolute.

In support of our analysis, we directly cited to *In re Derzapf*, 219 S.W.3d 327 (Tex. 2007) (orig. proceeding) (per curiam), which further refutes the Mother's proposed rule that the wishes of a fit parent are absolute. *Id.* at 333–34 (recognizing that the father was "a fit parent by all accounts," but still considering whether the father was not acting in the child's best interest by refusing to permit grandparent visitation).

10

We also cited heavily to the Texas Supreme Court's recent decision in *C.J.C.*, which contains the following passage:

> When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request. No party alleges, no evidence demonstrates, and no court finding exists that [the child's] father is unfit to be her parent. Nor is there evidence or findings rebutting the resulting presumption that [the child's] father acts in her best interest.

*C.J.C.*, 603 S.W.3d at 820.

The last two sentences of this passage demonstrate that the fitness of the parent "result[s]" in a "presumption" that the parent acts in the child's best interest, and that this presumption is "rebutt[able]." Thus, contrary to the Mother's argument on appeal, her fitness as a parent does not mean that her child-rearing decisions require absolute deference. *See In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("While parental rights are of constitutional magnitude, they are not absolute."); *Troxel*, 530 U.S. at 92–93 (Scalia, J., dissenting) (remarking that "no one believes the parental rights are to be absolute"). Instead, her fitness as a parent means that the trial court was required to presume that she acted in the best interest of the Child when she decided how frequently or infrequently to allow visitation with the Ex-Girlfriend.

During oral argument, the Ex-Girlfriend argued that this fit-parent presumption should not apply because the Child viewed her as a parent. We cannot accept that argument. The trial court specifically found that the Ex-Girlfriend was a nonparent, and the Ex-Girlfriend has not presented any legal basis for setting aside that finding. She did not adopt the Child, which would have otherwise provided a statutory basis for treating her as a parent. *See* Tex. Fam. Code § 160.201. She did not enter into any kind of novel gestational agreement with the Mother as an "intended parent." *See* Tex. Fam. Code § 160.754. Nor did she advocate for any sort

11

of extension of the law regarding presumptive fathers. *See* Tex. Fam. Code § 160.204.

We hold that under *C.J.C.*, the fitness of the Mother gives rise to a presumption that the Mother acts in the best interest of the Child when she makes child-rearing decisions, including visitation decisions. The question we must now confront is whether the Ex-Girlfriend successfully rebutted that presumption.

## THE EX-GIRLFRIEND'S BURDEN OF PROOF

In deciding whether the Ex-Girlfriend rebutted the fit-parent presumption, we must first determine her burden of proof, which is an issue that was not decided in *S.D.*

The Legislature has determined the burden of proof for some types of nonparents who seek visitation over a fit parent's objection, but as of yet, this burden has been limited to just grandparents. *See* Tex. Fam. Code § 153.433(a)(2). For all other types of nonparents like the one here who has only fictive kinship, the Legislature has not provided any statutory guidance. *See C.J.C.*, 603 S.W.3d at 823 (Lehrmann, J., concurring) ("The question of the degree of evidence necessary to overcome the presumption that a fit parent's decisions are in the best interest of the child when a nonparent who has acted in a parent-like role seeks visitation remains unanswered."); *see also In re N.B.*, No. 04-15-00095-CV, 2015 WL 4479758, at \*1 n.1 (Tex. App.—San Antonio July 22, 2015, no pet.) (mem. op.) ("Fictive kinship is a phrase used to describe family relationships or ties that are based [on] neither consanguineal (blood) nor affinal (by marriage) ties.").

We do not construe the absence of such guidance as implying that nonparents like the Ex-Girlfriend are categorically precluded from being appointed as possessory conservators. The Family Code provides that "if a managing conservator

12

is appointed, the court may appoint one or more possessory conservators." *See* Tex. Fam. Code § 153.006(a). Because this general provision does not distinguish between parents and nonparents, it can be interpreted to authorize the appointment of any nonparent with standing as a possessory conservator—not just a nonparent who happens to be a grandparent. Although this authorization does not inform the Ex-Girlfriend's burden of proof, other provisions reflect a legislative judgment that there must be a showing of harm to the child before any sort of nonparent can obtain court-ordered visitation.

The clearest reflection of this judgment is the statute for grandparent visitation, which provides that the grandparent can only obtain possession if the grandparent shows by a preponderance of the evidence that the denial of possession "would significantly impair the child's physical health or emotional well-being." *See* Tex. Fam. Code § 153.433(a)(2).

A similarly worded standard appears in the separate statute governing parents as managing conservators. That statute provides that when there is only one parent, as there is here, the trial court must appoint that parent as sole managing conservator, unless the appointment would "significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code § 153.131(a).

Another similarly worded statute provides that if a parent is not appointed as a managing conservator, then the parent must be appointed as a possessory conservator unless that possession "would endanger the physical or emotional welfare of the child." *See* Tex. Fam. Code § 153.191.

None of these statutes specifically answers the question here, but they all evince a policy judgment that the fundamental rights of parents cannot be infringed by a court absent some compelling reason, and that reason must typically involve the health and welfare of the child.

13

The Mother argues that the burden on a nonparent such as the Ex-Girlfriend should be at least as onerous as the burden for a grandparent seeking visitation. The Ex-Girlfriend has not expressed any sort of agreement that her burden should be the same as the burden that applies to grandparents. The Ex-Girlfriend actually believes that she was not required to produce evidence of significant impairment because she did not seek managing conservatorship, but that explanation is factually untrue, and it misses the legal point in this visitation dispute.

The Ex-Girlfriend also refers us to cases from other jurisdictions, which have supposedly established factors in which a "psychological parent" can obtain nonparent visitation. The Ex-Girlfriend does not specifically advocate that we adopt one set of factors over another. One of the factors identified in her brief references the existence of a "bonded, dependent relationship parental in nature." Though this factor does not directly reference any sort of harm to the child, it suggests indirectly that the severing of a bonded relationship would result in significant emotional harm, which tends to track the policy judgment of our Legislature that the fundamental rights of parents should not be infringed unless the health or welfare of the child is at stake.

We encourage the Legislature to provide clearer guidance in this area, but until it does so, we believe based on the current state of our laws that a nonparent with standing who has no biological or legal relationship to the child cannot obtain court-ordered possession of a child over the wishes of a fit parent unless the nonparent proves, at a minimum, that the denial of possession would significantly impair the child's physical health or emotional well-being. We now consider whether the Ex-Girlfriend carried that burden of proof.

## NO EVIDENCE OF SIGNIFICANT IMPAIRMENT

The trial court made a finding that "the child will suffer significant effects if [the Ex-Girlfriend] is removed from the child's life," which is language that closely resembles the "significant impairment" standard that applies to grandparents. The trial court also found that these significant effects were "emotional harm" and "psychological harm." Viewing the record in the light most favorable to these findings, we nonetheless conclude that they lack evidentiary support.

In other cases where we have applied the "significant impairment" standard, we have said that the "link between the parent's conduct and harm to the child may not be based on evidence which merely raises a surmise or suspicion of possible harm." *See In re F.E.N.*, 542 S.W.3d 752, 770 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (per curiam). We have also recognized that "significant impairment has been inferred from uprooting a child from a nonparental caretaker when the removal would be 'devastating' or akin to 'psychological amputation' or cause 'serious psychological damage,'" but we further indicated that there must be some evidence explaining how the impairment would manifest as "significant." *See In re J.C.*, 346 S.W.3d 189, 194–95 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Here, the Ex-Girlfriend did not produce any expert testimony from a therapist or psychologist. Instead, she offered her own lay opinion as to what would happen if she were removed from the Child's life:

Q.  And is [the Mother] asking for the Court to deny all your relief requested?

A.  Yes.

Q.  Do you think [the Child] would be affected by that?

A.  Yes.

15

Q. And why do you think [the Child] would be affected by that?

A. Because she knows me as her mom. She has two moms. She has told me she has two moms. She has told other friends and family that she has two mommies. She would feel like I was abandoning her if I'm not in her life.

This testimony does not establish how the harm would manifest, or even whether it would be significant. At most, the testimony only raises a surmise or suspicion of harm. Following analogous precedent, we conclude that the trial court abused its discretion when it found that the Child would suffer significant effects if the Ex-Girlfriend were denied court-ordered visitation. *See In re Scheller*, 325 S.W.3d 640, 643–44 (Tex. 2010) (orig. proceeding) (per curiam) (concluding that the trial court abused its discretion by appointing a grandparent as temporary possessory conservator where the strongest evidence of impairment established merely that the children displayed anger and experienced instances of isolated bed-wedding and nightmares); *J.C.*, 346 S.W.3d at 195 ("Although the record contains some testimony that uprooting [the child] from the [grandparents] would exacerbate her separation anxiety and be harmful to her sense of loss, in no way does the evidence establish that such harm would cause a significant impairment to her emotional development.").

We likewise conclude that the Ex-Girlfriend failed to carry her burden of proof, and that the trial court abused its discretion when it overruled the wishes of the Mother.

## ATTORNEY'S FEES

The Mother has requested attorney's fees, but she has not supported her request with any argument or citation to authority. We overrule that request as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## CONCLUSION

The trial court's order is reversed and judgment is rendered denying the Ex-Girlfriend's petition. *Cf. In re J.R.D.*, No. 05-06-01554-CV, 2007 WL 4415879, at *2 (Tex. App.—Dallas Dec. 19, 2007, no pet.) (mem. op.) (reversing an order and rendering judgment denying the grandparents' petition for access and visitation because the grandparents failed to satisfy their burden of proof).


/s/    Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

17