**Opinion filed February 26, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-07-00331-CV

———————

## IN THE INTEREST OF J.M.T., A CHILD

**On Appeal from the 259th District Court**

**Shackelford County, Texas**

**Trial Court Cause No. 2006-023**

### O P I N I O N

This appeal arises from an order granting grandparent visitation. Appellants are the paternal grandparents of the child. They initiated the underlying proceeding by filing a petition against the biological parents of the child seeking to be named as the joint managing conservators of the child. Appellees are the maternal grandparents of the child. They intervened in the underlying proceeding by seeking an order granting them possession or access to the child. Appellants subsequently filed an amended petition seeking to terminate the rights of the child's biological parents. In this regard, the biological parents of the child executed affidavits relinquishing their parental rights. Appellants additionally sought to adopt the child.

The case proceeded to a final hearing that occurred on September 21, 2007. Appellees did not oppose appellants' efforts to terminate the parental rights of the child's biological parents or their

request to adopt the child. The trial court granted the requested termination and adoption by naming appellants as the parents of the child at the outset of the hearing. The trial court then conducted a contested hearing on appellees' request for an order providing them access to the child. Appellants opposed the request on the basis that, as the newly named parents of the child, they did not want to be subjected to a fixed, court-mandated schedule for appellees' visitation of the child. The trial court granted appellees' request for grandparent access by entering an order providing for their possession of the child on the first weekend of each month, a portion of the Thanksgiving and Christmas holidays, and one week each summer.

*Issue*

In a sole issue, appellants assert that the trial court abused its discretion by awarding appellees court-ordered possession of the child. We reverse and render.

*Applicable Law*

Possession of or access to a child by a grandparent is governed by the standards established by TEX. FAM. CODE ANN. ch. 153 (Vernon 2008). TEX. FAM. CODE ANN. § 102.004© (Vernon 2008); *In re Chambless*, 257 S.W.3d 698, 700 (Tex. 2008). The specific statute applicable to this appeal is Section 153.433. The legislature amended Section 153.433 in 2005 in an effort to bring the Texas statute into compliance with the U.S. Supreme Court's holding in *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion). *See In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007). The Court held in *Troxel* that parents enjoy a fundamental right to make decisions concerning "the care, custody, and control of their children." 530 U.S. at 65. "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *Troxel*, 530 U.S. at 68.

Section 153.433(2) now requires that a grandparent seeking court-ordered access overcome the presumption that a parent acts in his or her child's best interest by proving by a preponderance of the evidence that "denial . . . of access to the child would significantly impair the child's physical health or emotional well-being." *Derzapf*, 219 S.W.3d at 333. Under the statute, a trial court must presume that a fit parent acts in his or her child's best interest. *Id.* A trial court abuses its discretion when it grants access to a grandparent who has not met this standard because a trial court has no

discretion in determining what the law is or in applying the law to the facts, even when the law is unsettled. *Id.*; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004).

The parental presumption set out in Section 153.433(2) is applicable to this appeal in light of appellants' status as the newly adoptive parents of the child. *See* TEX. FAM. CODE ANN. § 101.024 (Vernon 2008) ("Parent," as used in Section 153.433, is defined as "the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, *or an adoptive mother or father*." (emphasis added)); *see also* TEX. FAM. CODE ANN. § 162.017(a) (Vernon 2008) ("An order of adoption creates the parent-child relationship between the adoptive parent and the child for all purposes."). Accordingly, we review the record to determine if appellees satisfied the heightened requirements of Section 153.433(2).

*Analysis*

The evidence offered at the final hearing was largely uncontested. Appellees agreed that appellants had essentially been acting as the child's parents for the eighteen-month period preceding the hearing and that they had done a good job in that role. Appellees also stated that they had a "good rapport and relationship" with appellants regarding visitation in the past. Appellants stated that they wanted appellees to continue to have a "good healthy relationship" with the child and that they intended to continue permitting appellees to have access to the child. However, appellants did not want appellees' visitation with the child to be controlled by a fixed schedule.

The trial court entered a finding of fact that "[d]enial of possession of the child [by appellees] would significantly impair the child's emotional development." Appellees contend that there is evidence that supports this finding.[1] Specifically, the following exchange occurred during the direct examination of appellee Cynthia Thomason:

> Q. At this point in [the child's] life would denying possession and access to you–to him by you and your husband, do you think that would significantly impair his emotional development?
>
> A. Yes, I do.

---

[1]Appellees cite our holding in *In re S.C.S.*, 201 S.W.3d 882, 888 (Tex. App.—Eastland 2006, no pet.), for the proposition that, if there is some evidence of a substantive and probative character to support the decision of the trial court, no abuse of discretion occurs. *See In re E.A.C.*, 162 S.W.3d 438, 441 (Tex. App.—Dallas 2005, no pet.); *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.).

Appellees also point to evidence indicating that they had been having court-ordered visitation with the child on an every-other-weekend basis for the preceding twelve-month period as a result of temporary orders entered by the court.

We disagree with appellees' contention that there is evidence supporting the trial court's finding. We initially note that there is no evidence that appellants intended to deny appellees from having possession of or access to the child. To the contrary, the evidence indicates that appellants would continue to permit appellees to have access to the child. The supreme court ruled in *Mays-Hooper* that an order granting grandparent visitation cannot survive the holding in *Troxel* if there is no evidence that the parent intended to completely exclude the grandparent's access. *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006). Furthermore, Section 153.433(2) provides:

> [T]he grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that *denial of possession of or access to the child* would significantly impair the child's physical health or emotional well-being (emphasis added).

Thus, the "denial of possession of or access to the child" by the grandparent is an express element in obtaining grandparent access under the statute in contravention of a parent's preference. Without evidence that appellants intended to deny appellees any possession or access to the child, the trial court abused its discretion by granting court-ordered visitation to appellees.

Moreover, the evidence of significant impairment to the child's emotional development is lacking. It essentially consists of an affirmative response from an interested witness (one of the grandparents seeking access to the child) to a question that tracked the language of the statute. As noted by the Texas Supreme Court in *Derzapf*:

> The Legislature set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest: the grandparent must prove that denial of access would "*significantly* impair" the children's physical health or emotional well-being. TEX. FAM. CODE § 153.433(2) (emphasis added). There has been no such showing here. A court may not lightly interfere with child-rearing decisions made by [a fit parent] simply because a "better decision" may have been made. *Troxel*, 530 U.S. at 73, 120 S.Ct. 2054.

219 S.W.3d at 334. In the absence of evidence elaborating how the denial of access to the grandparent would significantly impair the child's physical health or emotional well-being, we

4

conclude that the evidence cannot overcome the parental presumption. Appellants' sole issue is sustained.

## *Conclusion*

This is an unusual grandparent access case because it pits one set of the child's biological grandparents against the other set of biological grandparents. However, the set of grandparents that opposed the requested grandparent access attained the status of parents by virtue of their adoption of the child. There is no evidence that appellants have been or will be unfit parents to the child. Thus, their preference for appellees' visitation schedule with the child must be accorded a high level of deference. There is no evidence that appellants intend to deny appellees access to the child. Furthermore, even if there was evidence that appellants intended to deny access, there is insufficient evidence that the denial would significantly impair the child's well-being.

## *This Court's Ruling*

The judgment of the trial court is reversed, and judgment is rendered in favor of appellants on the issue of grandparent possession or access.


TERRY McCALL

JUSTICE


February 26, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5