**Opinion filed June 29, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00153-CV

_____

## IN THE INTEREST OF E.R.D. AND H.J.D., CHILDREN

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CV37174**

### O P I N I O N

This appeal originates from the trial court's grant of Appellees, Denise and James D.'s, petition for possession of and access to their minor grandchildren, E.R.D. and H.J.D.  *See* TEX. FAM. CODE ANN. § 153.433 (West 2014).  In a single issue, Appellant, Kelly D., E.R.D. and H.J.D.'s biological mother, asserts that the trial court abused its discretion when it granted Appellees' petition and request for possession of and access to E.R.D. and H.J.D. because the evidence is insufficient (1) to overcome the parental presumption and (2) to support the trial court's finding

that denying Appellees' possession of and access to the children would significantly impair the children's emotional well-being. We reverse and render.

## I.  *Factual Background*

On December 11, 2020, Jeremy D., E.R.D. and H.J.D.'s biological father, died as a result of a work-related accident. Prior to Jeremy's death, Denise and James had a close relationship with E.R.D. and H.J.D. When E.R.D. was born, Kelly and Jeremy moved in with Denise and James and lived with them until E.R.D. was four. Kelly and Jeremy thereafter moved into a house next door with their children, but they all continued to have frequent contact with Denise and James.

After Jeremy's death, the relationship between Kelly and Denise began to sour. Kelly and Denise would frequently argue about a variety of issues, including arguments about the number of lawyers involved in the wrongful death lawsuits that were filed in connection with Jeremy's death. These arguments escalated when Brandi T.—Denise and James's daughter who lives with them—also began quarrelling with Kelly. Unfortunately, their disagreements continued to escalate during the year after Jeremy's death. As a result, E.R.D. and H.J.D. witnessed, on several occasions, loud and aggressive arguments between Kelly, Denise, and Brandi and they also heard Denise and Brandi make negative comments about Kelly.

The deteriorating relationship between Kelly and Denise became known in the community when Denise and Brandi posted comments about their squabbles on Facebook and engaged in conversation with unrelated parties in the wider community—so much so that third parties would approach the family and ask about the status of the family's relationship. These ongoing arguments had a negative effect on the children, and E.R.D. became very guarded and defensive of Kelly whenever she spent time with Denise and James; she would also cry when she returned home after visiting Denise and James.

2

During this volatile period, Kelly vacillated between whether to restrict and then resume James and Denise's access to the children based on the various incidents that had occurred between the parties. Because the quarrelling and "infighting" between the parties continued, Kelly decided that she and her children would no longer have contact with Denise, James, and Brandi. As a result of this decision, Denise and James filed a petition seeking possession of and access to E.R.D. and H.J.D.

## II. *Inadequate Briefing*

Prior to addressing the merits of Appellant's appeal, we must decide whether Appellant has submitted an adequate brief for our consideration. Appellees contend that Appellant's brief is "substantively deficient" because it does not contain any citations to the record. As a result, Appellees argue that we do not have the authority to independently review the record. We disagree.

The Texas Rules of Appellate Procedure require that an appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities *and to the record.*" TEX. R. APP. P. 38.1(i) (emphasis added). Appellees contend that Appellant's failure to identify and include record citations in her brief equates to a failure to present an issue for our review. But this is not an accurate representation of Appellant's brief. Here, Appellant's brief presents an issue for our review—whether the trial court abused its discretion when it granted grandparent access and possession to Appellees. Appellant's brief also includes citations to authorities in support of her argument. Thus, Appellant's briefing fails only to include appropriate citations to the record.

In determining whether this failure is detrimental to her appeal, we look to the Texas Rules of Appellate Procedure, which directs courts of appeals to liberally construe briefs and only require substantial compliance with the briefing rules "[b]ecause briefs are meant to acquaint the court with the issues in a case and to

present argument that will enable the court to decide the case." TEX. R. APP. P. 38.9. While Appellant's brief does not include citations to the record, as it should, overall, her brief substantially complies with the rules and adequately acquaints our court with the issue raised and associated arguments such that we are able to decide the appeal now before us. As such, we decline to hold that Appellant has failed to present an issue for our review, as Appellees suggest.

## III. *Standard of Review*

We review a trial court's decision to grant grandparents' request for access to or possession of their grandchildren for an abuse of discretion. *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007). A trial court abuses its discretion if it grants the requested access or possession when the grandparents do not "overcome the presumption that a parent acts in his or her child's best interest by proving that denial . . . of access to the child would significantly impair the child's physical health or emotional well-being." *In re Scheller*, 325 S.W.3d 640, 643 (Tex. 2010) (quoting *Derzapf*, 219 S.W.3d at 333) (internal quotations omitted). This is so because a "trial court has no 'discretion' in determining what the law is or applying the law to the facts[,] even when the law is unsettled." *Derzapf*, 219 S.W.3d at 333 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004)).

In family law cases when an abuse of discretion standard applies, as it does here, issues that relate to the legal and factual sufficiency of the evidence are not independent grounds of review, but, rather, are only factors that are used in assessing whether the trial court abused its discretion. *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.). "The trial court does not abuse its discretion so long as the record contains some evidence of substantive and probative character to support its decision." *Id.* at 699.

"When, as here, findings of fact are neither properly requested nor filed, we imply all necessary findings of fact to support the trial court's order." *In re W.C.B.*,

337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 312 (Tex. App.—Dallas 2008, no pet.). However, when the appellate record includes the reporter's record, as it does in this case, the trial court's implied findings may be challenged for legal and factual sufficiency. *W.C.B.*, 337 S.W.3d at 513.

In a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's order and indulge every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied). In a challenge to the factual sufficiency of the evidence, we consider all the evidence and determine whether the evidence supporting the order is so weak or against the overwhelming weight of the evidence such that the order is clearly wrong and manifestly unjust. *See City of Keller*, 168 S.W.3d at 826.

If the evidence is conflicting, we must presume that the factfinder resolved any inconsistency in favor of the order if a reasonable person could do so. *Id.* at 821. In this regard, the trial court, as the factfinder, is in the best position to observe the witnesses and their demeanor, and we afford great latitude and deference to the trial court when determining the best interest of a child. *S.E.K.*, 294 S.W.3d at 930.

## IV. *Applicable Law*

The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). This fundamental right is recognized in Texas jurisprudence based on the legal presumption that it is in a child's best interest to be raised by his or her biological parents. *In re C.J.C.*, 603 S.W.3d 804, 812 (Tex. 2020) (citing *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955)). Further, a fit parent is entitled to the presumption that they act in the best interest of their children. *Id.* at 820. "[S]o long as a parent

5

adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68–69.

The "fit parent presumption" is "deeply embedded in Texas law as part of the determination of a child's best interest." *C.J.C.*, 603 S.W.3d at 812. This presumption has also been incorporated into the statute that permits grandparents to seek the possession of or access to their grandchildren. *See* FAM. § 153.433(a)(2). The statute provides that a trial court may grant to a grandparent reasonable possession of or access to his or her grandchild if:

> (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;
>
> (2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would *significantly* impair the child's physical health or emotional well-being; and
>
> (3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
>
>> (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
>>
>> (B) has been found by a court to be incompetent;
>>
>> (C) is dead; or
>>
>> (D) does not have actual or court-ordered possession of or access to the child.

*Id.* § 153.433(a) (emphasis added).

The statutory burden to overcome the "fit parent presumption" has been described by the Texas Supreme Court as a "high threshold" and "hefty." *Scheller*, 325 S.W.3d at 643; *Derzapf*, 219 S.W.3d at 334. When a nonparent requests possession of a child, the child's best interest is clothed with the presumption that

the fit parent, and not a court, shall make the determination as to whether to grant the request. *C.J.C.*, 603 S.W.3d at 820. Therefore, to meet their burden and overcome this presumption, the grandparents must prove, at a minimum, that their grandchildren's physical health or emotional well-being has been, and will continue to be, *significantly* impaired by the denial of their request for possession of or access to their grandchildren. *See Interest of N.H.*, 652 S.W.3d 488, 497 (Tex. App.—Houston [14th Dist.] 2022, pet. filed); *Rolle v. Hardy*, 527 S.W.3d 405, 420 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that to meet this standard the grandparents must present evidence of specific, identifiable behavior or conduct by the parent that shows that the child's physical health or emotional well-being has been, and will be, significantly impaired by the denial of their request for possession or access) (citing *In re L.D.F.*, 445 S.W.3d 823, 830 (Tex. App.—El Paso 2014, no pet.)); *In re J.M.T.*, 280 S.W.3d 490, 493 (Tex. App.—Eastland 2009, no pet.).

In challenging this presumption, we also hold, as did the court in *Rolle*, that the grandparents must present proof of specific, identifiable behavior or conduct by the child's parent that demonstrates that the child's physical health or emotional well-being has been, and will continue to be, *significantly* impaired by the denial of their request for possession of or access to the children.

## V. *Discussion*

Kelly asserts that the trial court abused its discretion when it granted Denise and James possession of and access to E.R.D. and H.J.D. because there is no evidence of harm to the children, much less evidence of any *significant* impairment to the children's physical health or emotional well-being, if possession or access was denied.

When evaluating whether possession or access should be granted to a grandparent, courts have consistently considered three factors: (1) parental fitness, (2) the child's health and emotional well-being, and (3) the parent's intent to exclude

the grandparent's access completely. *Troxel*, 530 U.S. at 68–71 (the three factors upon which the Supreme Court in *Troxel* held that the State of Washington's grandparent visitation statute was unconstitutional are that (1) the child's mother was not unfit, (2) her decisions about grandparent access were given no deference, and (3) she was amenable to allowing the grandparent some visitation); *In re Mays-Hooper*, 189 S.W.3d 777, 777–78 (Tex. 2006) (holding that the grandparents' visitation request should have been denied because there was no evidence that (1) the child's mother was unfit, (2) the child's health or emotional well-being would suffer if the court deferred to her decisions, and (3) the mother intended to completely exclude the grandparents' access to the child). Regarding the third factor noted above, which is the focus of this appeal, we have held that "the 'denial of possession of or access to the child' by the grandparent is an express element in obtaining grandparent access under the statute in contravention of a parent's preference." *J.M.T.*, 280 S.W.3d at 493.

Here, Denise and James do not contend that Kelly is an unfit parent. To the contrary, during the final hearing both Denise and James testified that Kelly is a good and capable mother. Nevertheless, it is undisputed that Kelly has, and will continue to exclude, Denise and James from having any possession of or access to E.R.D. and H.J.D. Thus, we need only consider whether Denise and James met their burden to show that the denial of their possession of or access to the children has, and will continue to, *significantly* impair the children's physical health or emotional well-being.

To meet the "significant impairment" standard, the evidence must do more than raise a mere surmise or suspicion of possible harm; the evidence must establish that the associated impairment is, and will be, *significant*. *In re F.E.N.*, 542 S.W.3d 752, 770 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (per curiam). "Significant impairment" may be inferred from the uprooting

8

of a child from a nonparent caretaker; however, to establish *significant* impairment, some evidence must be presented to explain how the impairment is or will be *significant*, such as evidence that the child's removal would be devastating to or cause serious psychological damage to the child. *See In re J.C.*, 346 S.W.3d 189, 194–95 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The Texas Supreme Court's decisions in *Scheller* and *Derzapf* demonstrate the high burden that must be met to overcome the fit parent presumption under the significant impairment standard. *See Scheller*, 325 S.W.3d at 643–44; *Derzapf*, 219 S.W.3d at 330–34.

In *Derzapf*, the court held that the children's lingering sadness from the lack of contact with the grandparents did not sufficiently demonstrate *significant* harm to the children. 219 S.W.3d at 330–34. A court-appointed psychologist testified that the children's sadness could not be characterized as depression and that there was no indication that they exhibited other behavioral problems as a result of the lack of contact with the grandparents; therefore, this circumstance did not rise to a level of *significant* emotional impairment. *Id*.

Similarly, in *Scheller*, the court held that the evidence did not meet the *significant* impairment threshold based on the children's sadness that resulted from losing a family member and thereafter "missing" their grandparents, despite proof that (1) the children displayed anger; (2) one of the children experienced instances of isolated bed wetting and nightmares; (3) witnesses testified that denying the grandparents access to the children would impair the children's physical or emotional development; and (4) the grandparents were the children's only remaining maternal familial connection. 325 S.W.3d at 643–44.

The record before us is essentially devoid of any evidence that would directly or indirectly show that the children's physical health or emotional well-being has been, and will continue to be, *significantly* impaired as a result of their absence from

Denise and James. According to the evidence adduced by Denise and James at the final hearing, they enjoyed a close relationship with the children in the past—E.R.D. and her parents (Kelly and Jeremy) lived with Denise and James for the first four years of her life, and after they moved next door, Denise and James continued to see the children every day until Kelly decided to deny them access. Denise and James testified about their desire to maintain a close relationship with the children, and that they enjoyed providing a stress-free environment for the children; they also detailed many of the activities that they participated in with the children. According to Denise and James, they intended to continue to foster the value of "family" by telling the children about Jeremy and facilitating their relationship with their extended family.

As for the alleged impairment to the emotional well-being of the children, Denise and James testified to only a single incident that concerned H.J.D.—one morning H.J.D. wandered away from his home when he lived next door and later appeared at their house without Kelly's knowledge. They also testified about a previous incident where child protective services became involved in the family's life because of Kelly's alleged marihuana use at the time of E.R.D.'s birth. *See Rolle*, 527 S.W.3d at 420 ("A nonparent cannot meet his burden by . . . showing . . . that the parent would not have been a proper custodian in the past.") (citing *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) ("If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling.").

Nevertheless, neither Denise, James, nor any other witness that they presented at the final hearing testified as to how this separation and the denial of access had affected the children, if at all. In fact, Denise and James were unaware of the children's current emotional state because they had not seen the children for at least

six months. Denise and James only testified that their denial of access to the children would be a lifestyle change for the children. Based on this, they argue that the evidence they adduced at trial supports an inference that this separation and their denial of access to the children would result in *significant* impairment to the emotional well-being of the children. In support of their argument, they rely on *Casas v. Adriano*, No. 13-06-373-CV, 2007 WL 1941422, at *1 (Tex. App.—Corpus Christi–Edinburg July 5, 2007, no pet.) (mem. op.).

In *Casas*, the evidence showed that the child had a prior close relationship with the grandparents—the child previously resided with the grandparents, the grandparents acted as the child's primary caretakers, and the child referred to them as "mom" and "dad." *Id.* at *5. The court of appeals held that this evidence was sufficient to support an inference that a break in this close familial relationship could seriously affect the child's emotional well-being. *Id.* After the separation, the grandfather observed that the child seemed "crestfallen" and "kind of sickly." *Id.* at *4. Also, the grandfather had previously complained to child protective services that when the mother delivered the child to the grandparents during a visitation period that the child was "dirty" and the milk in his bottle was "rotten." *Id.*

In this case, the evidence is clearly distinguishable from the circumstances in *Casas* and does not support a similar inference. While Denise and James presented evidence that they had a prior, close relationship with the children, there are significant differences: (1) they never acted as the primary caretakers for E.R.D. or H.J.D., (2) H.J.D. never lived with them, and (3) E.R.D. and H.J.D. never referred to them as "mom" and "dad." Further, while there was some evidence in *Casas* that the child had suffered some negative effects as a result of being unable to see the grandparents, neither Denise nor James could attest as to whether this separation had negatively affected E.R.D. and H.J.D. in any respect. In fact, when asked at the final hearing about the how this separation had significantly impaired the emotional well-

11

being of the children, Denise responded "Gosh, what knowledge, all I have is my heart. I know how much they loved us . . . I don't have any reason to believe that the kids have gone out of their mind or something, whatever. But I do know our hearts and how much they loved being with us is all I can tell you." Heartfelt expressions, without more, are insufficient to meet the "*significant impairment*" standard.

To the contrary, Kelly presented evidence that the children's emotional well-being had improved since the separation. Kelly testified that (1) the children have not appeared to be upset with being unable to spend time with Denise and James and have been very happy since the separation began, (2) E.R.D. is doing well in school, and (3) the children talk about their father frequently and in a positive manner. Kelly also presented evidence from five other witnesses who have close relationships with the children and have been able to interact with them during the same six-month period that followed the separation. Each witness testified similarly—that the children appear to be happy and have benefited from the separation.

Further, the record shows that the ongoing arguments between Kelly, Denise, and Brandi negatively affected the children. Denise testified that since the relationship with Kelly and Brandi began to decline, but prior to the separation, she observed that E.R.D. was guarded and often defended Kelly when E.R.D. was in Denise's presence. Kelly testified that E.R.D. would sometimes cry after she visited Denise and James, and that it was her impression that E.R.D. had been told things about her and Jeremy's relationship—namely that Kelly did not love Jeremy. The children also observed several fights and other confrontations between Denise and Kelly, including one incident that became physical when Denise threw a diffuser at Kelly.

We have thoroughly reviewed the record and conclude that Denise and James failed to overcome the fit parent presumption. To overcome this presumption,

Denise and James were required to present evidence of "specific, identifiable behavior or conduct" by Kelly that would *significantly* impair the children's physical health or emotional well-being. *Rolle*, 527 S.W.3d at 420; *J.M.T.*, 280 S.W.3d at 493. They failed to do so. Like the children in *Scheller* and *Derzapf*, the evidence here indicates, according to Denise and James, that the children potentially experienced sadness because the children missed them. However, lingering sadness from a lack of contact between the children and their grandparents does not demonstrate *significant* impairment. *See Scheller*, 325 S.W.3d at 643–44; *Derzapf*, 219 S.W.3d at 330; *see also J.M.T.*, 280 S.W.3d at 493 (the evidence of significant impairment to the child's emotional development was lacking when it essentially consisted of an affirmative response from an interested witness, one of the grandparents seeking access to the child). Similar to the circumstances in *J.M.T.*, the evidence that Denise and James contend is tantamount to significant impairment consists only of an isolated, heartfelt comment from an interested witness—Denise. Moreover, the record shows that Kelly initiated the separation because arguments between her and Denise persisted and continued to escalate, and because she wanted to remove her children from being in an argumentative environment.

Nonparents, such as Denise and James, cannot meet their burden to overcome the parental presumption simply by claiming that they believe they would be a better custodian of the children, that they had a close relationship and significant involvement with the children in the past, or that the children's parent would not have been a proper custodian of the children in the past. *Troxel*, 530 U.S. at 72–73 (a trial court may not interfere with the child rearing decisions that are made by a fit parent simply because a better decision could have been made by another); *In re H.L.*, 613 S.W.3d 722, 726–27 (Tex. App.—Fort Worth 2020, no pet.); *In re Kelly*, 399 S.W.3d 282, 284 (Tex. App.—San Antonio 2012, org. proceeding); *J.M.T.*, 280 S.W.3d at 493. To prevail, Denise and James were required to present evidence to

13

establish the *significant* impairment component. Here, there is none. Further, what may be inferred from a grandparent's past relationship with a child, alone, is not enough to meet the "significant impairment" standard.

We recognize the importance of developing and maintaining a loving and productive grandparent/grandchild relationship. However, there are compelling reasons why legal standards exist that govern this sensitive subject. In this context, we are bound to follow these established standards. Therefore, based on this record, we hold that the trial court abused its discretion when it granted Denise and James access to and possession of E.R.D and H.J.D. Accordingly, we sustain Appellant's sole issue on appeal.

## VI. *This Court's Ruling*

We reverse the order of the trial court and render judgment in favor of Appellant.

W. STACY TROTTER

JUSTICE

June 29, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

14